## Ex parte SICHOFSKY.

(District Court, S. D. California, S. D.    May 31, 1921.)

No. 2991.

1. War ⊙⟶33—War-time statute not inoperative until official declaration of peace.

Act May 22, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 7628e), and the executive order issued thereunder, making it unlawful, "when the United States is at war," for an alien to enter the United States without a passport as therein required, *held* not to have become inoperative because of the ending of actual war and prior to an official declaration of peace.

2. War ⊙⟶33—Saving clause in resolution terminating war-time acts saves prosecutions under presidential regulations.

The saving clause in Joint Resolution of March 3, 1921, terminating war-time acts on that date, that it shall not affect prosecutions for previous violations, applies to violations of executive orders respecting passports, etc., made under Act May 22, 1918, c. 81 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 7628e–7628h), which by express terms of the act are made criminal offenses.

3. Criminal law ⊙⟶1001, 1216(6)—Court does not lose jurisdiction by stay of execution of sentence, but time of stay is counted as time of imprisonment.

That a federal court, after sentencing a defendant to imprisonment and issuing a commitment to the marshal, stayed execution of the sentence to permit the prisoner to be tried in a state court for an offense against a state law, he remaining meanwhile in custody of the marshal, did not deprive the court of jurisdiction over him, though it entitled him to have the time of the stay counted as part of his term of imprisonment.

On petition of Abram Sichofsky for writ of habeas corpus. Denied.

Cooper, Collings & Shreve, of Los Angeles, Cal., for petitioner.

Robert O'Connor, U. S. Atty., and Thos. F. Green, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

BLEDSOE, District Judge. The contentions advanced by petitioner herein as a reason why he should be discharged from his present custody, maintained by the United States marshal in virtue of a commitment heretofore issued out of this court, following his plea of guilty as for a violation of law of the United States, may be briefly stated and determined:

The indictment to which petitioner pleaded guilty charged him, a citizen of Poland, with having, on or about the 23d day of August, 1920, entered and attempted to enter the United States from the republic of Mexico, "without then and there bearing and having in his possession a passport duly viséed in accordance with the terms of section 31 of an executive order dated August 8, 1918, issued pursuant to an act of Congress approved May 22, 1918," etc. (40 Stat. 559 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 7628e–7628h]). There is no specific averment upon the subject, but in the absence thereof, and in view of the fact that he was tried and found guilty before the superior

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court of the county of Los Angeles of the crime of grand larceny, committed in the county of Los Angeles "on or about the 18th day of November, 1920," it must be assumed that he did in fact enter the United States, and that the crime committed by him was not merely that of "an attempt to enter."

After this court, on March 22, 1921, had pronounced judgment upon petitioner, by sentencing him to three years' imprisonment in the federal penitentiary, and to pay a fine in the sum of $1,500, upon application made by the district attorney of Los Angeles county, because of an indictment pending in the superior court of that county, an order was made by this court on March 29, 1921, staying the execution of the sentence adjudged therein for the period of 15 days; and it was further ordered that "the United States marshal take the above-named defendant to the Hall of Justice, to the courtroom thereof, in the city of Los Angeles, county of Los Angeles, state of California, at such times as his presence in the proceedings there pending against him under said indictment in the superior court of the state of California in and for said county of Los Angeles shall be required." It was further required in said order that the marshal "keep the said defendant in his custody for the purposes herein stated." Pursuant to such order, and presumably in complete accordance therewith, the petitioner was taken to the superior court of Los Angeles county, there suffered trial, was regularly convicted and sentenced, etc. Since the first order staying execution, pending the hearing and determination of this writ, etc., upon the application or with the consent of petitioner, further stays have been granted, and he is now in consequence thereof still in the custody of the United States marshal in the county jail in Los Angeles.

The first claim advanced is that there is no law justifying the indictment or subsequent proceedings had against petitioner in this court. This is based upon three propositions: First, that the Act of May 22, 1918, hereinabove referred to, was by its terms limited to the period "when the United States is at war," and that in all substantial aspects of the case, the war having ceased and determined, the statute became inoperative and ineffective for any purpose before petitioner came into this country. The second contention is that the statute was repealed by implication in virtue of the Act of November 10, 1919 (41 Stat. 353), purporting to enact a new law upon the identical subject-matter, and which new law, by its own terms, was to continue in force and effect only "until and including the 4th day of March, 1921," a point of time anterior to the plea of guilty and pronouncement of judgment on petitioner herein. The third contention is that the act was expressly repealed by the joint resolution of Congress, adopted March 3, 1921 (section 3115$^{14}$/$_{45}$f, Comp. Stats.), repealing certain designated "war-time acts."

[1] I think it clear that this court may not now say that the war has ended, even within the meaning of that phrase as used in the statute of May 22, 1918. It is common knowledge, of course, that no treaty of peace has been ratified by this government, that no repeal of the declaration of war has been had, and that, subject only to the terms

of an armistice, American troops are still on foreign soil. In such event, as I understand the law, there is no formal state of peace. United States v. Anderson, 9 Wall. 56, 19 L. Ed. 615; Hijo v. United States, 194 U. S. 315, 24 Sup. Ct. 727, 48 L. Ed. 994. Neither may the court say, in my judgment, that substantially and operatively we are at peace, and that therefore the validity possessed by the statute during war-time has failed, and that the reason for its original enactment has ceased. Conceding, under the decision of Hamilton v. Kentucky Distilleries Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. 194, that the court might hold a statute inoperative on the theory that, the reason for the statute having ceased, the statute itself would cease, nevertheless I cannot accept the minor premise of the syllogism necessary to be entertained. The reason has not yet ceased. We have as yet no peace with Germany. Our troops are yet upon her soil. The court may not say, with the completeness and satisfaction that seems to be required, that there is no longer necessity for a watchfulness of the entry of immigrants across our border. Until the court may say that, it must hold that the wisdom of Congress, made manifest by the statute, must control and limit the rule of individual conduct. We do not have here the "clear case" which must exist before the court may thus hold a law of the United States inoperative. Hamilton v. Kentucky Distilleries Co., supra.

[2] The joint resolution repealing the war-time acts, hereinabove referred to, itself constitutes a determination on the part of Congress that, for purposes of construction of relevant statutes, the war "terminated on the date" when that resolution became "effective," to wit, March 3, 1921. The Act of November 10, 1919, by its own terms was to become effective only upon the date when the Act of May 22, 1918, "shall cease to be operative." The last-mentioned act has ceased to be operative, not in virtue of a return to peace, but only in virtue of the provisions of the aforesaid Joint Resolution of March 3, 1921. Therefore the Act of November 10, 1919, had not yet become effective when petitioner entered this country. His action, being in violation of the Act of May 22, 1918, may even now be punished in virtue of the saving clause affixed to the joint resolution repealing that act.

This joint resolution, enacted in the last days of the Sixty-Sixth Congress, repealing certain war-time acts, carried with it a saving clause to the effect that nothing therein contained should be held "to exempt from prosecution or to relieve from punishment" any offense theretofore committed in violation of the acts therein repealed or referred to, etc. In view of the express and positive provisions of section 13 of the Revised Statutes (Comp. St. § 14), this saving clause was hardly necessary. U. S. v. Reisinger, 128 U. S. 398, 9 Sup. Ct. 99, 32 L. Ed. 480. Its insertion, however, makes it clear and indubitable that Congress was intending to make punishment possible for those who had violated the law previous to its repeal.

That it should be given effect in this wise is too plain for argument or extended discussion. Counsel make the point, however, that though, by the terms of the saving clause, the act itself was kept in force and effect, yet nothing in the saving clause served to keep in force and ef-

fect the proclamations or regulations of the President issued under and pursuant to the act, and that in consequence, the offense charged herein being in violation of a regulation or proclamation issued by the President in conformity to the requirements of the act, the saving clause did not operate as a preventive of total and unqualified repeal. There is more of form in this contention, however, than of substance. The Act of May 22, 1918, provides definitely and specifically:

"That when the United States is at war, if the President shall find that the public safety requires that restrictions and prohibitions in addition to those provided otherwise than by this act be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or Congress, be unlawful—

"(a) For any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders. and subject to such limitations and exceptions as the President shall prescribe."

It is obvious, then, that Congress was intending to declare that in virtue of the exigencies brought about by the war, as long as the President deemed it necessary and should make proclamation thereof, it should be unlawful to enter the country, except in virtue of the regulations to be established by him. No entry at all could be lawful, as long as the condition of danger attached, to be determined by the President, except in compliance with his instructions and regulations. This was followed (section 3) by the provision that any person who should willfully "violate any of the provisions of this act, or of any order or proclamation of the President promulgated, or of any permit, rule, or regulation issued thereunder," should upon conviction be punished, etc.

Petitioner's argument, in effect, with respect to pending prosecutions, is that, though there was no repeal of the law, because of the saving clause, yet there was a repeal of the presidential proclamations and regulations, because they were not specifically mentioned in and covered by the saving clause. The law possessed no efficacy, however, except as the proclamations or regulations duly promulgated by the President gave it efficacy, and to hold, with respect to prosecutions already begun or violations already had, that the law remained, but that the proclamations and regulations were repealed, would be to retain the shadow and disregard the substance, to keep the incident and destroy the principal. Such cannot be the construction to be accorded to the action taken. The violation charged herein, and for which petitioner must stand for judgment, was not of a proclamation of the President or regulations promulgated by him, but a violation of a law which said that no entry might be had, save under enumerated circumstances. In this wise it is clear that any saving clause which applied to the law itself would suffice to support and justify any prosecution had and maintained under the law.

I conclude, then, that ample authority existed for the rendering of the indictment herein, and that the court had jurisdiction, in virtue of petitioner's plea of guilty, to pronounce the judgment under which he is held.

[3] It is asserted, however, that the court lost all of its jurisdiction thus acquired in virtue of the order made permitting the petitioner, all

the while in custody of the United States marshal, to be tried in the state court as for the crime of grand larceny. It may be true, yet this court, having no concern with the matter, does not express any opinion thereon, that in view of the jurisdiction of this court attaching to the person of the defendant in the behalf and respects hereinabove enumerated and referred to, the superior court of the state of California could and did acquire no jurisdiction to try him, at the time it did, as for an asserted violation of the law of the state of California. If that be so, and if that court lacked jurisdiction, it will be so determined in appropriate tribunals. I discover nothing, however, based either upon reason or authority, from which it may now be adjudged that the action of this court, in temporarily staying the execution of the judgment of this court, served to divest this court of jurisdiction to require petitioner to stand for judgment as for the admitted violation of the federal law. It would be a strange and bold assertion, in my judgment, for this court, possessing the amplest jurisdiction as above referred to, to hold that it had completely divested itself of all jurisdiction in the premises merely by an order staying execution. I see nothing in the decision relied upon by petitioner (In re Jennings [C. C.] 118 Fed. 479) requiring such conclusion.

It is obvious, of course, that as against the protest of the petitioner, which protest must be considered as having been impliedly made, the court could not, by granting a stay of execution, add to the length of time that he should be deprived of his liberty. In that behalf, I am persuaded that petitioner is entitled to have subtracted from the total period of incarceration adjudged against him, the length of time elapsed since the rendering of the judgment herein. In re Jennings, supra.

The order of the court therefore will be that the writ of habeas corpus herein is discharged, and the prisoner is remanded to the custody of the United States marshal, to abide the judgment of this court heretofore delivered herein. The commitment eventuating from that judgment, being a process emanating from this very court, and being still within the control of this court, should now be recalled and amended to conform to the opinion and judgment rendered necessary herein. An order will be entered, therefore, recalling the commitment and decreeing its amendment, to the effect that the term of imprisonment heretofore adjudged upon petitioner will begin to run as from the date of pronouncement of the aforementioned judgment herein.