FLORA v. RUSTAD, United States Marshal.

(Circuit Court of Appeals, Eighth Circuit.
September 23, 1925.)

No. 6959.

1. **Statutes** ⊜~51—**Statute passed for special purpose, and effective for limited time, may be extended by later statute, without limit or condition.**

A statute passed for special purpose, and effective during named conditions and for limited time, may be extended by a later statute, to be effective without limit and without condition either in its entirety or in part, or as to all its subject-matter or part thereof.

2. **Aliens** ⊜~56—**War** ⊜~33—**Alien unlawfully entering United States in July, 1924, held not subject to criminal liability therefor.**

Alien unlawfully entering United States in July, 1924, held not subject to criminal liability therefor, in view of Act May 22, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 7628e–7628h), denouncing as a crime departure from or entry into the United States by an alien when the United States is at war, in violation of executive order of June 14, 1924, not being extended beyond war period, which terminated July 2, 1921, by Act March 2, 1921, and Immigration Act May 26, 1924 (Comp. St. Supp. 1925, §§ 4289¾–4289¾nn), continuing policy of deportation, and manifesting no intention that an alien shall be subjected in times of peace, first to a term of imprisonment, and then deported on its expiration.

Appeal from the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Petition for writ of habeas corpus by Stefan Flora against Edward Rustad, as United States Marshal for the District of Minnesota. From an order denying the writ, petitioner appeals. Reversed and remanded.

F. A. Grady and Alexander Fosmark, both of Crookston, Minn., for appellant.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and George A. Heisey, Sp. Asst. U. S. Atty., of Minneapolis, Minn., for appellee.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. This is an appeal from an order denying appellant's petition for writ of habeas corpus. The issuance of the writ was denied on the showing made in the petition, which alleged that appellee is United States Marshal for the District of Minnesota, that the United States Attorney for that district filed a criminal complaint with the United States Commissioner charging " * * * that on or about the 14th day of July, 1924, at a point near Noyes, in Kittson County, District of Minnesota, Stefan Flora, in violation of Section 7628hh, U. S. Compiled Statutes, 1916, 1923 Supplement, did unlawfully enter the United States from Canada, at a point near Noyes, as aforesaid, he being an alien and not duly admitted into the United States by an immigrant inspector nor being lawfully entitled to enter the United States, against the peace and dignity of the United States and contrary to the form of the statute in such case made and provided"; that a warrant of arrest embodying the charge set up in the complaint was issued by the commissioner for the apprehension of Flora, that pursuant thereto appellee arrested him, put him in jail and was holding him there; and it was alleged that appellant was being thus unlawfully restrained of his liberty. The petition further alleged that neither the charge filed with the commissioner nor the warrant which he issued stated facts sufficient to show that petitioner had committed an offense, but petitioner's counsel has submitted the case here on broader grounds, ignoring the question of the sufficiency of the charge in matters of form, which is largely a statement of conclusions; and contends that in July, 1924, there was no law of the United States making appellant's entry a criminal offense.

Section 7628hh (so called), named in the charge defines no offense. It refers to a prior act, which is the real basis of the complaint and warrant. The prior act, approved May 22, 1918 (40 Stat. 559 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 7628e–7628h]), is entitled: "An act to prevent in time of war departure from or entry into the United States contrary to the public safety." In part it reads thus:

"That when the United States is at war, if the President shall find that the public safety requires that restrictions and prohibitions in addition to those provided otherwise than by this act be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or Congress, be unlawful—

"(a) For any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President shall prescribe."

Section 2 (section 7628f) makes it unlawful, after the presidential proclamation pro-

vided for in the act has been published and while it is in force, for any citizen of the United States to depart from or enter the United States without complying with the limitations and exceptions authorized and prescribed by the President, unless he bears a valid passport.

Section 3 (section 7628g) reads thus:

"That any person who shall willfully violate any of the provisions of this act, or of any order or proclamation of the President promulgated, or of any permit, rule, or regulation issued thereunder, shall, upon conviction, be fined not more than $10,000, or, if a natural person, imprisoned for not more than twenty years, or both; and the officer, director, or agent of any corporation who knowingly participates in such violation shall be punished by like fine or imprisonment, or both; and any vehicle or any vessel, together with its or her appurtenances, equipment, tackle, apparel, and furniture, concerned in any such violation, shall be forfeited to the United States."

On August 8, 1918, proclamation issued, wherein the President found that the public safety required that restrictions and prohibitions on departure and entry, in addition to those provided otherwise than by the Act of May 22, 1918, should be imposed, and ordered that no citizen should receive a passport, and no alien should receive permission, entitling them to depart from or enter the United States unless it should affirmatively appear that there was reasonable necessity for such departure or entry and that such departure or entry would not be prejudicial to the interests of the United States. On August 8th the President also issued an executive order on the subject of passports, permits and permissions to leave or enter the United States, providing among other things, that " * * * no alien shall be allowed to enter the United States unless he bears a passport duly visaed in accordance with the terms of the Joint Order of the Department of State and the Department of Labor Issued July 26, 1917."

On February 1, 1922, President Harding issued an executive order amending the executive order of August 8th. On June 14, 1924, President Coolidge issued an executive order prescribing regulations governing the entry of aliens into the United States, the closing paragraph of which reads:

"This order shall take effect July 1, 1924, and shall supersede the Executive Order of August 8, 1918, entitled: 'Rules and Regulations Governing the Issuance of Permits to Enter and Leave the United States' and all subsequent Executive Orders amendatory thereof."

The crime denounced by the Act of May 22, 1918, is the departure from or entry into the United States by a citizen during a state of war, without his complying with the limitations and exceptions authorized and prescribed by the President under the Act, unless he has a valid passport, and the departure from or entry into the United States by an alien when the United States is at war, contrary to and in violation of the President's proclamation or of any permit, rule, or regulation issued thereunder. Criminal liability, if any, must rest on a violation of President Coolidge's Executive Order which requires that all aliens (immaterial exceptions) must present immigration visés, issuance of which is provided for in the general Immigration Act of May 26, 1924 (Comp. St. Supp. 1925, §§ 4289¾–4289¾nn). Peace was declared July 2, 1921 (42 Stat. 1939, et seq.), which terminated the force and effect of the Act of May 22, 1918, unless Congress had theretofore extended it into times of peace. A like result would have followed from the Joint Resolution of the two Houses of Congress, approved March 3, 1921, which terminated war measures (41 Stat. 1359).

It is the contention of the district attorney that appellant is liable criminally under the Act of May 22, 1918, which, he says, was extended beyond the war period by the Act of March 2, 1921 (41 Stat. 1205, 1217). The act last named is entitled "An act making appropriations for the Diplomatic and Consular Service for the fiscal year ending June 30, 1922," and that part of it relied on by the district attorney is found in a paragraph, p. 1217, which reads thus:

"For expenses of regulating entry into the United States, in accordance with the provisions of the Act approved May 22, 1918, and of this Act, to be immediately available, $600,000: Provided, that the provisions of the Act approved May 22, 1918, shall, in so far as they relate to requiring passports and visés from aliens seeking to come to the United States, continue in force and effect until otherwise provided by law."

The clause relied on is that part of the paragraph quoted above after the words, "Provided, that," and has been put down by the annotator of the U. S. Compiled Statutes as section 7628hh and thus referred to in the criminal charge lodged with the commissioner.

The principal question presented here is whether the proviso should be given the effect attributed to it by the district attorney. It has not been construed in that respect, so far as we are advised. In Ex parte Sichofsky (D. C.) 273 F. 694, Id. (C. C. A.) 277 F. 763, it appears that the offense charged was committed prior to the Joint Resolution of March 3, 1921, and, of course, prior to the declaration of peace in July, 1921. U. S. v. Wallis (D. C.) 278 F. 838, was not a criminal prosecution under the Act of May 22, 1918. The question seems to have been whether the alien was in this country unlawfully because he came without a passport required by the Acts of May 22, 1918, and March 2, 1921, and subject to deportation. It was not decided that the Act of March 2, 1921, extended criminal liability under the Act of May 22, 1918, into times of peace. That point was not in the case and was not considered.

[1, 2] Plainly, the clause relied on by the district attorney does not continue in express terms criminal liability of an alien under the Act of May 22, 1918, for entering without a passport, when the United States is not at war. We are asked to so construe it. A statute passed for a special purpose and effective during named conditions and for a limited time may be extended, of course, by a later statute to be effective without limit and without conditions. It may be extended in its entirety or in part, or as to all of its subject-matter or part thereof. It is clear that the whole act was not extended as a peace measure, nor were the limitations and restrictions on the departure and entry of citizens extended by the Act of March 2, 1921. By section 2 of the Act of May 22, 1918, a citizen was subject to prosecution, fine and imprisonment if he departed from or entered the United States after the issuance of the President's proclamation and his order imposing restrictions and limitations, unless he bore a valid passport. The effect of the proviso was to except, by necessary implication, from regulatory control under the Act of May 22, 1918, all citizens who might thereafter enter, continuing in force, however, the requirement that only aliens having passports might enter; and that was retained for regulatory purposes, without any legislative expression on the subject of criminal liability for entry without a passport.

It is argued that it was the intention of Congress, shown by debates when the Act of March 2, 1921, was on its passage, to extend criminal liability of aliens, and why continue the requirement that they should have passports unless it was intended that they should be punished if they came in without them? We find nothing in the debates which expresses the claimed intention on the point. The necessity for restrictions following the war was evident, and that was the subject discussed, but nothing was said about consequences to the alien if the restrictions were not complied with. It has never been the policy of this Government to punish criminally aliens who come here in contravention of our immigration laws. Deportation has been the remedy. A reversal of that policy ought to be based on a clear legislative declaration, and not on judicial construction of statutes which leave the subject in such uncertainty and doubt as do the statutes here under consideration. The subject-matter dealt with in the paragraph in which the clause is found was an appropriation immediately available for expenses of regulating entry into the United States in accordance with the provisions of the Act of May 22, 1918, and of the Act then on its passage,—it was to regulate the entry, not to punish those who violated the regulations. Nothing is said on that subject, nor does the proviso add anything thereto. It merely continued the requirement as to passports, that they should be issued to aliens by the consular service as the basis for regulating the entry. There is nothing in the main subject-matter of the paragraph or of the proviso that indicates an intention to retain and extend criminal liability. At best it would be a doubtful construction to hold that there was such an intention, and hence criminal liability under the Act of May 22, 1918. In United States v. Clayton, 2 Dill. 219, Fed. Cas. 14,814, Judge Dillion said:

"The doctrine is fundamental in English and American law, that there can be no constructive offenses; that before a man can be punished his case must be plainly and unmistakably within the statute, and if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused. These principles of law admit of no dispute, and have been often declared by the highest courts, and by no tribunal more clearly than the Supreme Court of the United States. U. S. v. Morris, 14 Pet. (39 U. S.) 464 [10 L. Ed. 543]; U. S. v. Wiltberger, 5 Wheat. (18 U. S.) 76 [5 L. Ed. 37]; U. S. v. Sheldon, 2 Wheat. (15 U. S.) 119 [4 L. Ed. 199]. And see, also, Ferret v. Atwill, Fed. Cas. No. 4,747; Sedg.

8 F.(2d)—22

St. and Const. Law, 324, 326, 334; 1 Bish. Cr. Law, §§ 134, 145." Zoline's Federal Criminal Law and Procedure, vol. 1, § 182, and cases there cited.

On May 26, 1924, Congress passed an Immigration Act (43 Stat. 153) which appears to cover fully the subject of entry of aliens into the United States. Under the requirements of that Act and the Executive Order of President Coolidge issued June 14, 1924, all aliens seeking admission must present immigration visés. Its thirty-first section (Comp. St. Supp. 1925, § 4289¾n) provides that "if any alien arrives in the United States before July 1, 1924, his right to admission shall be determined without regard to the provisions of this act"; by implication his right to admission if he arrives after July 1, 1924, would be determined by the provisions of that act.

Again, in its fourteenth section (section 4289¾g) it provides:

"Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this Act to enter the United States, or to have remained therein for a longer time than permitted under this act or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 19 and 20 of the Immigration Act of 1917." But the act does not make it a criminal offense on the part of the alien for so entering or remaining. It continues the policy of deportation, and there is no express or implied intention found in any of these statutes that the alien shall be subjected in times of peace, first to a term of imprisonment, then deported on its expiration. In the absence of a clear declaration to that effect there is conflict. One alien may be deported only, the other imprisoned and then deported, dependent on which department of the Government acts first.

The writ was denied in October, 1924. Appellant may still be held in custody under the warrant issued by the United States Commissioner. If so, it is ordered that the District Judge set aside his order denying the writ, that he enter an order directing that the writ of habeas corpus issue and on return thereto that he discharge appellant. But appellant may not now be held under the warrant of arrest. He may have been indicted by the grand jury and held on the indictment. If so, his case should be disposed of in regular course, and if there then be cause for complaint the remedy is by writ of error.

Reversed and remanded.