**JOHNSON, Immigration Com'r, v. KEATING ex rel. TARANTINO.**

(Circuit Court of Appeals, First Circuit. December 31, 1926.)

No. 1998.

**1. Habeas corpus ⊜95—Right to enter, dependent on statutory construction, is question of law, reviewable on habeas corpus.**

Where alien's right to enter depends on construction of a statute, it is a question of law, reviewable on habeas corpus.

**2. Aliens ⊜51½, New, vol. 16A Key-No. Series—Visa or return permit is not essential to entry of nonquota immigrant, returning after temporary absence (Immigration Act 1924, §§ 2–13 [Comp. St. §§ 4289¾a–4289¾ff]).**

By the provisions of Immigration Act 1924, §§ 2–13 (Comp. St. §§ 4289¾a–4289¾ff) immigration visas and return permits are made convenient, but are not essential, evidence of the status of a nonquota immigrant returning from a temporary visit abroad, and such status may be shown by other evidence.

**3. Constitutional law ⊜62—Regulations for enforcement may not enlarge or narrow provisions of statute.**

Authority given by a statute to an executive department to make a regulation for its enforcement extends only to such regulations as are consonant with the statute itself.

**4. Aliens ⊜39—War power, given President to impose restrictions on immigration, held terminated by Immigration Act (Immigration Act 1924 [Comp. St. §§ 4289¾–4289¾nn]; Act May 22, 1918, § 1 [Comp. St. § 7628e]; Act March 2, 1921, § 1 [Comp. St. § 7628hh]).**

The power given the President by the War Act of May 22, 1918, § 1 (Comp. St. § 7628e), by proclamation to impose additional restrictions on the departure of persons from and their entry into the United States, continued in effect by Act March 2, 1921, § 1 (Comp. St. § 7628hh), "until otherwise provided by law," was terminated as to immigrants by Immigration Act 1924 (Comp. St. §§ 4289¾–4289¾nn), which carefully revised the immigration laws.

Johnson, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Petition by Cornelius F. Keating, on relation of Francesco Tarantino, against John P. Johnson, Commissioner of Immigration, for writ of habeas corpus. From a decree granting the writ, respondent appeals. Affirmed.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Dist. Atty., of Boston, Mass., on the brief), for appellant.

Cornelius F. Keating, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The court below on habeas corpus held Tarantino an alien entitled to admission as a nonquota immigrant returning after a temporary absence abroad.

Tarantino first arrived from Italy in July, 1920. He was lawfully admitted. He took out his first citizenship papers in April, 1922. He remained in the United States until January, 1925, when he went to Italy to visit his sick mother. He bought a return ticket before his departure.

On his arrival at Providence in October, 1925, he was excluded, on the sole ground that he had no return permit or immigration visa, and the steamship company that brought him in was fined $1,000 and $107 passage money under section 26 of the Immigration Act of 1924 (43 Stat. 158 [Comp. St. § 4289¼e]).

[1, 2] The narrow question is whether, without an immigration visa or a return permit, he is entitled to admission. His rights depend upon the proper interpretation of the applicable provisions of the Immigration Act, supra. It is a question of law, reviewable on habeas corpus. Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114. Concededly, he is a nonquota alien under section 4 (b) being Comp. St. § 4289¾b.

"Sec. 4. When used in this act the term 'nonquota immigrant' means * * *

"(b) An immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad."

Other sections which must be considered in determining the problem are:

"Sec. 8. A consular officer may, subject to the limitations provided in sections 2 and 9, issue an immigration visa to a nonquota immigrant as such upon satisfactory proof, under regulations prescribed under this act, that the applicant is entitled to be regarded as a nonquota immigrant."

"Sec. 10. (a) Any alien about to depart temporarily from the United States may make application to the Commissioner General for a permit to reenter the United States, stating the length of his intended absence, and the reasons therefor. Such application shall be made under oath, and shall be in such form and contain such information as may be by regulations prescribed, and shall be accompanied by two copies of the applicant's photograph."

"Sec. 10. (f) A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning." Comp. St. §§ 4289¾d, 4289¾e.

Section 13 (Comp. St. § 4289¾ff), which falls under the heading "Exclusion from the United States," is as follows:

"Sec. 13. (a) No immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa, or was born subsequent to the issuance of the Immigration visa of the accompanying parent; (2) is of the nationality specified in the visa in the immigration visa; (3) is a nonquota immigrant, if specified in the visa in the immigration visa as such; and (4) is otherwise admissible under the immigration laws.

"(b) In such classes of cases and under such conditions as may be by regulations prescribed immigrants who have been legally admitted to the United States and who depart therefrom temporarily may be admitted to the United States without being required to obtain an immigration visa."

That the return permit was intended as a mere convenience both to the alien and to the immigration officials is obvious, especially from the language, supra, in section 10 (f), which, in the first clause, guards the government against permits being held conclusive (for instance as against error or fraud), and, in the second clause, guards the right of the alien against such construction as would make the permit "the exclusive means of establishing that the alien is so returning" from a temporary absence.

So, also, as to immigration visas: Under section 13 (b), immigrants, legally admitted and temporarily absent, may come in without the immigration visa referred to in section 13 (a) (3).

Taking the provisions as to permits and visas together, we think it clear that Congress intended them as convenient, but not essential, evidence for determining the real status of nonquota immigrants returning from a temporary absence.

In section 24 (Comp. St. § 4289¾l) we find the usual power for the department to prescribe rules and regulations for the enforcement of the provisions of the act.

Turning to the regulations (issue of July 1, 1925) we find in rule 3, subdivision 1, entitled "Nonquota Status Proof," paragraphs 2 and 5, the following:

"Par. 2. An alien claiming to be nonquota immigrant by reason of having been previously lawfully admitted to the United States and to be returning from a temporary visit abroad shall be required to establish such fact to the satisfaction of the examining immigration official: Provided, that the presentation of a return permit duly issued to such alien pursuant to the provisions of section 10 of the Immigration Act of 1924 shall be deemed prima facie evidence of the fact that such alien is returning from a temporary visit abroad."

"Par. 5. Where an immigrant claiming a nonquota status fails to satisfactorily establish such status in the manner required by this subdivision, he shall be held for examination in relation thereto by a board of special inquiry."

These are plain and reasonable regulations. They show that the immigration authorities intended to allow such aliens—not having the permit (made merely prima facie proof) or the immigration visa—an opportunity to establish their status by testimony

at a hearing before the examining immigration official, whose adverse decision may be revised by a board of special inquiry. This method of determining the rights of aliens accords with the practice and procedure of that department for many years. It gives to the returning alien the usual fair, though summary, hearing, in order that his status may be determined *in the light of the facts*. These regulations construe the statutes as we now construe them.

But the government now undertakes to ground Tarantino's exclusion upon another regulation found in the same rule 3, subdivision F, entitled "Immigration and Passport Visas," which, so far as now pertinent, reads:

"No immigrant, whether a quota immigrant or nonquota immigrant, of any nationality shall be admitted to the United States unless such immigrant shall present to the proper immigration official, at the port of arrival, an immigration visa duly issued and authenticated by an American consular officer: Provided that * * * such aliens who are returning from a temporary visit to any other foreign country and who are in possession of a permit to re-enter the United States issued in accordance with the provisions of section 10 of the Immigration Act of 1924 * * * if otherwise admissible, shall be permitted to enter the United States without an immigration visa."

This paragraph is, at least as now construed, inconsistent with the regulation above quoted found in subdivision I of the same rule.

Clearly, there was no sense in providing in subdivision I, supra, that a nonquota immigrant like Tarantino should "be required to establish such fact to the satisfaction of the examining immigration official," with the right to have an adverse decision reviewed by a board of special inquiry—if the only method of establishing such fact, open either to the examining officer or to the board of special inquiry, be the presentation of an immigration visa or a return permit.

[3] But we need not rest our decision on the inconsistency of the regulations. We go farther. Congress never delegated to immigration officials authority to make a regulation which cuts down substantially the rights given by the act itself. It is probable, perhaps certain, that Congress could not delegate such substantive legislative power. See Field v. Clark, 143 U. S. 649, 694, 12 S. Ct. 495, 36 L. Ed. 294.

The language in section 13 (b), that such nonquota immigrant may be let in "under such conditions as may be by regulations prescribed," does not give authority to prescribe regulations which do not operate "for the enforcement of the provisions of this act" (section 24), but operate to enlarge the excluding features of the act. Without further elaboration, we regard it as inconceivable that, if Congress had intended to make the rights of such returning aliens entirely dependent upon the possession of a return permit or an immigration visa, it would not have said so in unmistakable terms.

A nonquota immigrant like Tarantino is entitled to come in, if he establishes his statutory status by any reasonable method. Williamson v. United States, 207 U. S. 425, 461, 462, 28 S. Ct. 163, 52 L. Ed. 278. Otherwise put, a regulation which undertakes to exclude all evidence of nonquota status, except a return permit or an immigration visa, is unreasonable, inconsistent with the general import of the act, and therefore void.

Parenthetically, it might, in this particular case, be of significance that this provision in subdivision B, paragraph 1, under which Tarantino is now sought to be excluded, was, as stated in the government's brief, incorporated in the regulations after Tarantino's departure, but before his return. Perhaps some additional color is given to the injustice of the proceeding from the fact that Tarantino sought to obtain an immigration visa in Italy, and was told that none was needed. Clearly, if Congress had intended that return permits or immigration visas should be the sole means of establishing the status of such returning aliens, it would, as matter of elementary justice, have provided for full notice to its consular officers, and for such notice to departing aliens as to enable them to take proper steps to protect their rights. As now applied, the regulation (subdivision F, supra) operated as a trap to cheat Tarantino out of his plain rights. And these observations also apply to the steamship company, whose good faith in transporting Tarantino cannot be questioned; yet under the decision of the department the company is assessed a fine of $1,000, besides $107 of passage money.

[4] The government contends that a proclamation of the President may also be relied upon as adequate legal ground for holding that returning immigrants like Tarantino are admissible only if possessing either a return permit or an immigration visa. We cannot accept that proposition.

This proclamation, dated January 12, 1925, is made "by virtue of the authority vested in me by the act of Congress ap-

proved May 22, 1918, entitled 'An act to prevent in time of war, departure from and entry into the United States contrary to the public safety,' as extended by the Act of Congress of March 2, 1921, entitled 'An act making appropriations for the diplomatic and consular services for the fiscal year ending June 30, 1922,' and with reference to the Act of Congress of May 26, 1924, known as the 'Immigration Act of 1924.'" So far as pertinent to the present case, the proclamation reads:

"* * * I hereby prescribe the following regulations governing the entry of aliens into the United States:

"1. *Immigrants.* They must present immigration visas, quota or nonquota, in accordance with the requirements of the immigration act of 1924, except * * *

"2. Aliens who have previously been admitted legally into the United States, who have departed therefrom and have returned within six months."

As Tarantino was absent nine months, he is held to fall within paragraph 1 of this proclamation.

The President's authority to make passport regulations is found in the Act of May 22, 1918, 40 Stat. 559, the relevant part of which is as follows:

"That *when the United States is at war,* if the President shall find that the public safety requires that restrictions and prohibitions in addition to those provided otherwise than by this act be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or Congress, be unlawful—(a) for any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President shall prescribe." Section 1 (Comp. Stat. § 7628e).

It was a war act. It is contended that it is now in force under the Act of March 2, 1921, 41 Stat. 1217, as follows:

"Passports and visas from aliens seeking entry into the United States. The provisions of the Act approved May 22, 1918, shall, in so far as they relate to acquiring passports and visas from aliens seeking to come to the United States, continue in force and effect until otherwise provided by law." Section 1 (Comp. Stats. § 7628hh).

This extended war power, granted in 1921, of the President to require visas "from aliens seeking to come to the United States,"

does not, in our opinion, vest in the President practically paramount control over the administrative features of the Act of 1924, passed three years later.

The act of 1921 under which this proclamation was issued is, as quoted above, to "continue in force and effect *until otherwise provided by law.*" We think that the act of 1924, containing the provisions above cited and discussed, now contain (so far as our present problem is concerned) provisions of law excluding any power otherwise vested in the President under the act of 1921, and that Congress had "otherwise provided by law," when the proclamation was issued.

It is inconceivable that, when Congress was, in 1924, carefully revising the immigration laws, so as to limit as far as possible hardships, inconsistencies, and injustices, which are the inevitable incidents of the most careful and conscientious administration of the sound national policy underlying the act, Congress left vested in the President the power to make regulations, now sought to be applied to the creation of a result so harsh and so absurd as the exclusion of Tarantino; for, to repeat, Tarantino is, on the undisputed and apparently indisputable facts, entitled to admission, unless he can be excluded for lack of the possession of an unimportant scrap of paper.

Even if Congress had undertaken to empower the President to make regulations as to the admission of aliens under the act of 1924 (as we think Congress did not), this regulation, as now construed and applied, is unreasonable, and therefore invalid.

That the real effect of the proclamation (as now construed) was ever considered by the President we find it impossible to believe.

Flora v. Rustad (C. C. A.) 8 F.(2d) 335, and Koyama v. Burnett (C. C. A.) 8 F.(2d) 940, we think not applicable to the problem before us.

The decree of the District Court is affirmed.

JOHNSON, Circuit Judge. I dissent from the majority opinion for the following reasons:

Section 13 of the Immigration Act of 1924, so far as material, provides that:

"No immigrant shall be admitted to the United States unless he * * * (3) is a nonquota immigrant if specified in the visa in the immigration visa as such, and (4) is otherwise admissible under the immigration laws."

Subdivision (b), under this section, is as follows:

"In such classes of cases and under such conditions as may be by regulations prescribed immigrants who have been legally admitted to the United States and who depart therefrom temporarily may be admitted to the United States without being required to obtain an immigration visa."

Section 10 provides that:

"Any alien about to depart temporarily from the United States may make application to the Commissioner General for a permit to re-enter the United States, stating the length of his intended absence, and the reasons therefor. Such application shall be made under oath, and shall be in such form and contain such information as may be by regulations prescribed, and shall be accompanied by two copies of the applicant's photograph."

Tarantino did not obtain a permit to re-enter the United States, and in his case we are not concerned about the provisions in relation to the permits contained in the act or in the regulations.

Under the immigration regulations and rules established on July 1, 1925, in accordance with the authority conferred by Congress, it is provided under rule 3, subdivision F, as follows:

"Par. 1. No immigrant, whether a quota immigrant or non quota immigrant of any nationality, shall be admitted to the United States unless such immigrant shall present to the proper immigration official at the port of arrival an immigration visa duly issued and authenticated by an American consular officer: Provided that (a) aliens who have been previously lawfully admitted to the United States and who are returning from a temporary visit of not more than six months to (the countries enumerated which are not here material), or such aliens who are returning from a temporary visit to any other foreign country and who are in possession of a permit to re-enter the United States issued in accordance with the provisions of section 10 of the Immigration Act of 1924 * * * shall be permitted to enter the United States without an immigration visa."

These regulations follow in every respect the provisions of the act. There is nothing in rule 3, subd. 1, par. 2, cited in the majority opinion, which excuses the nonquota immigrant from having an immigration visa or a permit.

It may well be that, though the immigrant has an immigration visa, as required by the act, the question of identity may have to be passed upon by the immigration officials, and, if its purpose is to confer upon the examining immigration officials the right to admit a nonquota immigrant without an immigration visa, as required in section 13, it is not in accordance with the act.

The President of the United States, by Executive Order No. 4125, issued on July 14, 1924, by virtue of the authority vested in him, as stated in the majority opinion, prescribed the following regulations governing the entry of aliens into the United States:

"1. *Immigrants.* They must present immigration vistas, quota or non quota, in accordance with the requirements of the Immigration Act of 1924, except * * * (2) aliens who have previously been admitted legally into the United States, have departed therefrom and have returned within six months. Of this class (b) those who have proceeded to countries other than those named in (a) may present in lieu of immigration visas permits to re-enter, issued under the provisions of section 10 of the act of 1924."

Whether it was a reasonable regulation to limit the temporary absence of an alien to six months, we are not called upon to decide, as no permit to re-enter was issued to Tarantino. That the President was authorized to issue regulations to carry into effect the provisions of the act of 1924 was held in Flora v. Rustad, 8 F.(2d) 335, and impliedly in Koyama v. Burnett, 8 F.(2d) 940, both decisions of Circuit Courts of Appeal.

It is inevitable that certain hardships should arise in the execution of a law of such wide application as the Immigration Act. The general purpose of the act is well understood, but its administrative features must necessarily involve many matters of detail.

In order to prevent fraud upon the law, it has been necessary to provide for a system by which those who would attempt to enter in violation of its provisions may be excluded and at the same time steamship companies might be protected. Under the system which has been established it is only necessary for them to be assured that an immigrant who seeks passage has either an immigration visa or a permit to re-enter the United States. If the officers in command of the steamship were to assure themselves by an examination of the immigrant whether he belonged to a nonquota class, as he claimed, they might find that they had been imposed upon and liable for bringing into the country an immigrant unlawfully when the immigrant was afterwards examined by immigration officials upon his application for admission.

But under the system which has been established by which the nonquota immigrant must be supplied either with an immigration visa or a permit to re-enter the country, the steamship company can protect itself by refusing passage to one who has neither.

In the Immigration Act Congress provided in express terms that a nonquota immigrant seeking admission to the United States must have an immigration visa or a permit to re-enter the United States regularly issued in accordance with the regulations of the superintendent of immigration. The immigration authorities have made specific and detailed regulations for carrying these provisions into effect and these have been supplemented by the executive order of the President, issued under authority conferred upon him by Congress.

It may be that Tarantino will suffer some hardship because of his failure to comply with the plain requirements of the law; but it is our duty to construe the law as it has been written, and in accordance with the regulations which have been lawfully made under it, uninfluenced by any seeming hardship upon any immigrant.

I think the order of the District Court should be reversed.