## REDERIAKTIEBOLAGET NORDSTJERNEN v. UNITED STATES.*
### No. 6708.

Circuit Court of Appeals, Ninth Circuit.
Nov. 21, 1932.

Zach Lamar Cobb and Earl A. Littlejohns, both of Los Angeles, Cal., and A. Warner Parker, of Washington, D. C., for appellant.

Samuel W. McNabb, U. S. Atty., and Clyde Thomas, Asst. U. S. Atty., both of Los Angeles, Cal.

*Rehearing denied January 9, 1933.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

## WILBUR, Circuit Judge.

This is an appeal from a judgment for defendant in a suit brought under the Tucker Act, 28 USCA § 41 (20), to recover the amount of a fine of $1,000 paid under protest and alleged to have been unlawfully assessed and collected by the collector of customs for Customs Division No. 27, State of California.

To appellant's second amended complaint demurrer was sustained and judgment of dismissal with costs entered.

The complaint as amended in substance alleges that plaintiff is a corporation organized and existing under the laws of the Kingdom of Sweden, and is the owner and operator of various vessels plying between ports of the United States and various ports of Europe; that one of said vessels, the Axel Johnson, was engaged in a trip from the port of Antwerp, Belgium, to the port of San Pedro, Cal.; that prior to the sailing of said vessel plaintiff's agents booked for passage Josephine Baardsen, and that "prior thereto, made due inquiry in good faith as to the right of said passenger to come to and remain within the United States," and at the time of bringing said passenger—September, 1929—to the port of San Pedro "acted in good faith and in the belief that she had the lawful right to come to and remain in the United States." Then follow allegations reading:

"That after arriving at said port of San Pedro, California, plaintiff discovered for the first time that said Josephine Baardsen was an alien, but the fact was that said Josephine Baardsen was an alien theretofore lawfully domiciled in the United States, and was returning from a temporary visit abroad, who, on arriving at the port of San Pedro, did not have in her possession either a re-entry permit or a non-quota visa, and that said Josephine Baardsen had lived in the United States for a great many years prior thereto and spoke English with practically no accent, and that thereupon said Josephine Baardsen was admitted for permanent residence into the United States of America by the immigration authorities under Section 13(b) of the Immigration Act of May 26, 1924, 8 USCA § 213(b), notwithstanding her lack of a re-entry permit or a non-quota visa at the time of her entry at said port of San Pedro, as aforesaid.

"That shortly after the arrival of said 'Alex Johnson' at said port of San Pedro, California, the said defendant, by and through Lewis H. Schwacbe, as Collector of Customs for District No. 27 of the United States, and for said port of San Pedro, by and through his deputies then in charge of said port of San Pedro, unlawfully assessed a fine against plaintiff herein in the sum of one thousand ($1,000.00) dollars, by reason of bringing said Josephine Baardsen on said vessel from said port of Antwerp, to said port of San Pedro in the United States, which fine was purported to be assessed under the provisions of section 16 of the Immigration Act of May 26th, 1924 (8 USCA § 216), and that thereafter, in order that said vessel might be granted clearance, plaintiff paid, under protest, to said Lewis H. Schwacbe, as said Collector of Customs for the United States, said sum of one thousand ($1,000.00) dollars, and that although demand has been made upon the defendant herein for the refund of said sum of one thousand ($1,000.00) dollars, no part thereof has been paid to plaintiff, and the whole is now due, owing and unpaid by defendant to plaintiff."

The question of law presented is the construction to be placed on sections 2, 10, 13, and 16 of the Immigration Act of 1924, 43 Stat. 153 (8 USCA §§ 202, 210, 213, 216). In so far as material for present consideration, said sections as they appear in the code annotated read:

"§ 202. * * * (d) *Notation on passport of number of visa.* If an immigrant is required by any law, or regulations or orders made pursuant to law, to secure the visa of his passport by a consular officer before being permitted to enter the United States, such immigrant shall not be required to secure any other visa of his passport than the immigration visa issued under this subchapter, but a record of the number and date of his immigration visa shall be noted on his passport without charge therefor. This subdivision shall not apply to an immigrant *who is relieved, under subdivision (b) of section 213 of this title, from obtaining an immigration visa.*" (Italics ours.)

"§ 210. (a) *Reentry permits; persons entitled to; application for; form and contents; verification; photograph accompanying.* Any alien about to depart temporarily from the United States may make application to the Commissioner General for a permit to reenter the United States. * * *

"(e) *Surrender of permit on return to United States.* Upon the return of the alien

to the United States the permit shall be surrendered to the immigration officer at the port of inspection.

"(f) *Effect of permit on rights of alien.* A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning."

"§ 213. (a) *Persons not to be admitted.* No immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa or was born subsequent to the issuance of the immigration visa of the accompanying parent, * * * and (4) is otherwise admissible under the immigration laws.

"(b) *Readmission of legally admitted aliens who have temporarily departed without visas.* In such classes of cases and under such conditions as may be by regulations prescribed immigrants who have been legally admitted to the United States and who depart therefrom temporarily may be admitted to the United States without being required to obtain an immigration visa. * * *

"(f) *Fines not to be remitted or refunded.* Nothing in this section shall authorize the remission or refunding of a fine, liability to which has accrued under section 216 of this title."

"§ 216. *Unlawful bringing of alien into United States by water; penalty; amount; clearance to vessels; remission or refundment.* (a) It shall be unlawful for any * * * transportation company, or the owner, * * * of any vessel, to bring to the United States by water from any place outside thereof * * * (1) any immigrant who does not have an unexpired immigration visa. * * *

"(b) If it appears to the satisfaction of the Secretary of Labor that any immigrant has been so brought, such person or transportation company, or * * * owner, * * * of any such vessel, shall pay to the collector of customs * * * the sum of $1,000 for each immigrant so brought, and in addition a sum equal to that paid by such immigrant for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, such latter sum to be delivered by the collector of customs to the immigrant on whose account assessed. * * *

"(c) Such sums shall not be remitted or refunded, unless it appears to the satisfaction of the Secretary of Labor that such person, and the owner, master, agent, charterer, and consignee of the vessel, prior to the departure of the vessel from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence, (1) that the individual transported was an immigrant, if the fine was imposed for bringing an immigrant without an unexpired immigration visa. * * *"

■ The rules adopted by the immigration authorities expressly provide for the admission of a nonquota immigrant who had been previously lawfully admitted to the United States and is returning from a temporary visit abroad. This regulation which is quoted in Johnson v. Keating (C. C. A.) 17 F. (2d) 51, col. 2 (rule 3, par. 2, sub. 1), authorizes the admission of such alien, if he shall establish the fact to the satisfaction of the examining official. It is provided that the return permit is prima facie evidence of the fact that the alien is returning from a temporary visit abroad, but is not a sine qua non of his admission. We therefore have a regulation adopted by the immigration authorities which authorized the admission of the immigrant in this case upon proof of a right to be admitted. In this connection it should be stated that rule 3, par. 2, sub. 1, supra, has since been amended to require an unexpired re-entry permit, except in the case of persons coming in from Canada, etc. It is evident from the above quoted provisions of the Immigration Act and from the regulation referred to, that for the purposes of entry an unexpired re-entry permit is the equivalent of an immigration visa. This was decided by the Supreme Court, or, at least assumed by it, in United States ex rel. Polymeris et al. v. Trudell, 284 U. S. 279, 52 S. Ct. 143, 144, 76 L. Ed. 291. The court there stated: "By section 13 of the Act (8 USCA § 213) and the regulations under it, as remarked by the court below, a returning alien cannot enter unless he has either an immigration visa or a return permit. The relators must show not only that they ought to be admitted, but that the United States by the only voice authorized to express its will has said so. Obviously it has not done so, and therefore the judgment must be affirmed."

This decision by the Supreme Court was to settle a difference of opinion as expressed by the Circuit Court of Appeals of the First Circuit in Johnson v. Keating, 17 F.(2d) 50, 54, and the Circuit Court of Appeals of the Second Circuit in a case taken over by the Supreme Court (United States ex rel. Poly-

meris v. Trudell), reported in 49 F.(2d) 730. An examination of the opinion in Johnson v. Keating shows that the difference between the two Circuit Courts of Appeals was with reference to the necessity for a re-entry permit. The Circuit Court of Appeals of the First Circuit held that under the regulations and the statute the applicant was entitled to admission if he could establish his right before the immigration authorities, and that they did not have a right to arbitrarily reject the applicant. Circuit Judge Johnson dissented. In the course of the dissent he said:

"Under the system which has been established it is only necessary for them [steamship companies] to be assured that an immigrant who seeks passage has either an immigration visa or a permit to re-enter the United States. * * * But under the system which has been established by which the nonquota immigrant must be supplied *either with an immigration visa or a permit to re-enter the country*, the steamship company can protect itself by refusing passage to one who has neither.

"In the Immigration Act Congress provided in express terms that a nonquota immigrant seeking admission to the United States must have *an immigration visa or a permit to re-enter* the United States regularly issued in accordance with the regulations of the superintendent of immigration. The immigration authorities have made specific and detailed regulations for carrying these provisions into effect and these have been supplemented by the executive order of the President, issued under authority conferred upon him by Congress." (Italics ours.)

At the time of the admission of Josephine Baardsen, the regulations of July 1, 1925, above referred to, were in effect. They were subsequently superseded by the regulations of January, 1930, which are not involved herein. These regulations were quoted in the opinion of the majority and minority in Johnson v. Keating. See 17 F.(2d) 54, col. 1, quoting rule 3, sub. (f). This paragraph contains a proviso in part as follows: "* * * such aliens who are returning from a temporary visit to any other foreign country and who are in possession of a permit to re-enter the United States issued in accordance with the provisions of section 10 of the Immigration Act of 1924 [8 USCA § 210] * * * shall be permitted to enter the United States *without an immigration visa*." (Italics ours.)

It should be observed also that the rules provide for the admission, without a re-entry permit, of aliens who have temporarily left the United States and gone to Canada, New Foundland, Bermuda, St. Pierre, Miquelon, Mexico, and Islands included in the Bahama and Greater Antilles group.

■ It follows from what we have said that Congress has expressly authorized the admission of aliens who have temporarily departed from the United States upon the faith of a re-entry permit and without an immigration visa. With this in mind we turn to the provisions of 8 USCA section 216 imposing a penalty upon the steamship company: "It shall be unlawful for any person, including any transportation company * * * to bring to the United States by water from any place outside thereof * * * any immigrant *who does not have an unexpired immigration visa*, or any quota immigrant having an immigration visa the visa in which specifies him as a nonquota immigrant." (Italics ours.)

This section literally construed would require a fine to be imposed upon every steamship company who brought to this country a person properly supplied with a re-entry permit issued in accordance with law entitling him to admission to the United States. It cannot be that Congress intended to penalize as "unlawful" the act of a steamship company in bringing to the United States a person who is entitled to enter therein by express authority of Congress contained in the same act which imposes the penalty. Furthermore, if the fine is so imposed it cannot be remitted by the Secretary of Labor. By virtue of section 216 he is empowered to remit the fine only in case the owners of the vessel could not have ascertained that the individual transported was an immigrant "if the fine was imposed for bringing an immigrant without an unexpired immigration visa." That is to say, if the penalty is to be applied to one who transports the holder of a re-entry permit, the Secretary of Labor has no power to remit the fine because the possession of a re-entry permit by an immigrant would of itself be notice to the owners of the vessel that the holder was an immigrant.

There is another consideration that leads to the conclusion that the penalties provided in section 216, supra, were not intended to be applied to the holder of a re-entry permit who is allowed to enter. The fine provided in subdivision (b), § 216, is $1,000 for each immigrant plus the transportation paid by the immigrant, which latter sum is to be delivered by the collector of customs to the immigrant on whose account it is assessed. It

is clearly implied that the fine thus contemplates a penalty imposed upon the steamship company by way of punishment to the extent of $1,000 and for the benefit of the immigrant to the extent of his transportation in order that he might return to his point of departure without loss, thus indicating that the penalty was not applicable to a case where the immigrant is entitled to enter. This subject has been considered by the Circuit Court of Appeals of the Second Circuit in Compagnie Generale Trans. v. United States, 51 F.(2d) 1053, 1055, while the question arose under the Immigration Act of 1917 and is therefore differentiated from the act now under consideration, the following quotation from paragraph 3, col. 1, p. 1055, is germane: "A strong reason for holding that a fine should not be imposed for bringing to the United States an alien who, though excludable under the statute, is temporarily admitted, is because the portions of the fine, namely, the $200 and the return passage money, are, as Judge Patterson said in Lloyd Sabaudo Societa v. Elting (D. C.) 45 F.(2d) 405 at page 409, indivisible. The carrier is required to pay the return purchase money to the collector in order to insure the alien against having to pay it, and section 9 provides that it shall be 'delivered by the collector of customs to the alien on whose account assessed' in aid of that object. It is impossible to suppose that a carrier is required to pay the return passage money for the benefit of an alien who is not excluded. Because the Department recognized the absurdity of such a supposition, it repaid the return purchase money deposited by the plaintiffs in this case."

In the light of this section 216 imposing a penalty upon the transportation of an immigrant who has no immigration visa, the section must be construed as applying only to cases where the law requires an immigration visa, and not to cases where the law expressly eliminates the necessity for such an immigration visa. This is not only a common sense view of the meaning of the statute but also conforms to the rule that statutes enforcing penalties are to be strictly construed.

The appellee seems to concede that if the immigrant had possessed a re-entry permit the penalty would have been erroneously imposed. It is true that in the case at bar the immigrant did not have a re-entry permit and no doubt Congress could have provided that for failure to have such re-entry permit a penalty would be imposed and a subsequent

exercise of discretion on the part of the immigration authorities in her behalf would not justify the remission of the fine, but Congress did not do so. It imposed a penalty for transportation of an immigrant without an immigration visa and did not provide a penalty for transportation of a person without a re-entry permit. While the visa and the permit are for some purposes equivalent, the rule that penal statutes are to be strictly construed forbids the extension of the penalty for transportation of a person without an immigration visa to the case of a person without a re-entry permit. It seems clear, then, that there is a large class of cases in which it was not intended that 8 USCA § 216 should apply; namely, those individuals admissible under subdivision (b), section 213, who are not required to have an immigration visa. The appellee relies upon the provisions of subdivision (f), § 213, supra (8 USCA § 213 (f), which provides that nothing therein contained shall be construed to authorize the remission or refunding of the penalty imposed by section 216, and therefore argues that the admission of an immigrant under subdivision (b), § 213, supra, without an immigration visa would not justify the remission or refunding of a penalty which has accrued under section 216. This argument assumes that section 216, supra, imposes a penalty. If there is no penalty of course there is no occasion for its remission.

Judgment reversed.