MATTER OF M/V "PACIFIC OCEAN"

In Fine Proceedings

DET-10/10.82

*Decided by Board January 7, 1966*

Fine under section 254(a)(1), Immigration and Nationality Act, for failure to detain on board an alien crewman until inspected by an immigration officer, does not lie for merely failing to present a crewman for inspection; imposition of fine under section 254(a)(1) places on the Government the burden of establishing by affirmative evidence that the crewman did, in fact, leave the vessel before he was inspected.

IN RE: M/V "PACIFIC OCEAN," which arrived at the port of Detroit, Michigan, from foreign, on September 26, 1965. Alien crewman involved: Almerindo Adriano.

This appeal is directed to an administrative penalty of $200, $1000 mitigated to the extent of $800, which the District Director at Detroit has ordered imposed on the vessel's Master, Eric L. Vogel, and/or its agents, Compass Agencies, Inc., for failure to detain the above-named alien crewman aboard the vessel at all times until he had been inspected by an immigration officer. The basic claim here is that the District Director erred in permitting a fine to stand in any amount.

While this vessel was docking in Detroit at approximately 6 p.m. on September 26, 1965, the Chief Mate ordered the Boatswain to inform the crew that it was to stand immigration inspection. During the period the ship was docking, an immigration officer was standing on the pier waiting to board the vessel to inspect its crew. Minutes after the ship docked, he came aboard. Also, within minutes after the ship docked a crew member was placed at the gangway. However, the subject crewman, a 23-year-old native and citizen of Brazil, was not presented to the boarding immigration officer for inspection. The ship's radio operator, who acted as interpreter and had the crewmen's passports in his possession, checked the vessel for a period of about 45 minutes and reported back to the immigration officer that he could not find this crewman aboard, and that some other member of the crew had indicated he had overheard the crewman here involved

expressing a desire to go ashore to the nearest bar and get a drink. The fact that he could not be found on the ship was then reported to the captain, who sent two members of the crew ashore to try to locate this crewman. They searched for approximately one hour without success. However, the crewman reported to duty at 6 a.m. the following morning. Insofar as the record shows, he sailed foreign with his ship.

The District Director draws an adverse inference from the following facts: the crewman was not presented for inspection to an immigration officer on the vessel's arrival; a 45-minute search of the vessel by two fellow crew members failed to locate him; and an unknown member of the crew stated that this crewman had indicated a desire to go ashore for a drink. The carrier, on the other hand, has submitted an affidavit from the crewman concerned in which he states that when he finished his tour of duty just prior to docking and immigration inspection he went to his cabin, got a fish line, and went directly to the forecastle; that he fished there for about four hours; that he caught six fish; that he then went to the galley and cooked them and ate them; that he did not see any crew members in the galley because most of them were ashore at that time; and he then returned to his cabin and went to sleep until 6 a.m. the following morning when he reported for duty. The carrier has also submitted an affidavit from a seaman aboard this ship who has stated that he went on duty at the gangway at 6:05 p.m. on the date of the vessel's arrival, remained on duty there until 7 a.m. the following morning and that during such period he did not see the crewman here involved either leave or board the ship. In addition, the carrier has submitted an affidavit from the Chief Mate who has stated that when the ship docked he directed the Boatswain to inform the crew to stand immigration inspection; that a guard was posted at the gangway as soon as the ship docked; and that the boarding immigration officer was standing on the dock as the ship arrived. Finally, the appellant has submitted an affidavit from the vessel's radio operator who assisted the boarding immigration officer in which he states that it was dark when he was searching the ship, and therefore difficult to see on parts of the deck; that the entire deck was not searched because it did not seem that the crewman here in question would be out on deck at that hour; and that the crewman for whom the search was being conducted had been fishing behind the anchor wench on the forecastle where he could not have been seen from the bridge or the deck.

We think that the foregoing evidence of record submitted by the carrier clearly overcomes the inference drawn by the District Direc-

tor. Accordingly, and for the following reasons, we agree that the fine has been improperly ordered imposed in this case.

Statutes enforcing penalties are to be strictly construed (*Rederiaktiebolaget Nordstjernen* v. *United States*, 61 F. 2d 808). Section 254(a)(1) of the Immigration and Nationality Act imposes a fine for failure to detain an alien crewman until he is inspected by an immigration officer. Only by extremely loose construction of that section could it be held that a fine will lie for merely failing to present him for inspection. We believe that such a holding is not valid. Consequently, before a fine may be imposed under that section, the burden is on the immigration authorities to establish by affirmative evidence that the crewman did, in fact, leave the vessel before he was inspected.[1]

We appreciate the difficulties encountered by the Service in achieving effective enforcement of the law under such circumstances, but the remedy, if any, lies elsewhere than with this Board. We find ourselves compelled to conclude, by reason of the language of the law and controlling precedents, that the Service has the burden of establishing a violation here which it has not met. If this leaves a loophole in the law, we have no power to plug it.

No evidence has been introduced showing that this crewman left the ship and went ashore in the United States. Since no such showing has been made, it cannot be found that a violation of section 254(a)(1) has been established. The appeal will, therefore, be sustained.

Finally, if the crewman had not sailed foreign with his ship, then the provisions of section 254(b) of the statute would have been operative. Under such circumstances, a prima facie case for imposition of a fine based on the failure to detain him for inspection would have been established without the necessity of obtaining evidence that he had, in fact, left the ship. In view of the foregoing, however, it is clear that section 254(b) of the statute is inapplicable here.

**ORDER:** It is ordered that the appeal be sustained and that no fine be imposed.

---

[1] Our ruling to this effect herein is consistent with decisions we have handed down previously in the unreported cases of the *SS "Anatina,"* F-0502/125, BIA, 1/28/55; and *SS "Port Saint John,"* F-0300/8112, BIA, 5/23/57