## NORDDEUTSCHER LLOYD v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 10, 1914.)

No. 116.

1. ALIENS (§ 59*)—PROSECUTION UNDER IMMIGRATION LAWS—BURDEN OF PROOF.

In a prosecution under Immigration Law (Act Feb. 20, 1907, c. 1134, 34 Stat. 904 [U. S. Comp. St. Supp. 1911, p. 510]) § 19, requiring aliens brought to this country in violation of law to be sent back at the expense of the owners of the vessel on which they came, and making it a misde-

meanor to make any charge for their return, the burden is on the government to prove that the aliens involved were brought to this country in violation of law and were ordered deported by competent authority.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 115, 116; Dec. Dig. § 59.*]

**2.** ALIENS (§ 57*)—OFFENSES AGAINST IMMIGRATION LAWS—ACTS CONSTITUTING.

Under Immigration Law (Act Feb. 20, 1907, c. 1134, 34 Stat. 906 [U. S. Comp. St. Supp. 1911, p. 515]) § 26, providing that any alien liable to exclusion because likely to become a public charge, or because of a physical disability other than tuberculosis or a loathsome or dangerous contagious disease, may be admitted in the discretion of the Secretary of Commerce and Labor upon the giving of a bond, the selling of return tickets to aliens who, though found by a board of special inquiry to be incapable of self-support and likely to become a public charge, were admitted by the Secretary of Commerce and Labor under bond, was not a violation of section 19, prohibiting the making of any charge for the return of aliens brought to this country in violation of law.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 114; Dec. Dig. § 57.*]

**3.** CRIMINAL LAW (§ 322*)—PRESUMPTIONS—REGULARITY OF OFFICIAL ACTS.

Though there was no specific proof of the various steps which brought the matter of admitting an alien under bond before the Secretary of Commerce and Labor, it appearing that he admitted them under bond, it would be presumed that the matter came before him in the regular course of official business in conformity with the immigration regulations and, that he acted in conformity to law.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 728; Dec. Dig. § 322.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on a writ of error to review a judgment of the District Court, Southern District of New York, sentencing plaintiff in error, which was defendant below, to pay a fine of $300 for alleged violation of section 19 of the Immigration Act of February 20, 1907. Reversed.

See, also, 186 Fed. 391; 223 U. S. 512, 32 Sup. Ct. 244, 56 L. Ed. 531.

Choate, Larocque & Mitchell (Joseph Larocque, of New York City, of counsel), for plaintiff in error.

J. E. Walker, of New York City, Asst. U. S. Atty.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. Defendant was indicted March 3, 1911, for making a charge and taking security for the return passage of two aliens brought to this country on defendant's steamer Rhein in December, 1910. This indictment was demurred to in the lower court, where the demurrer was sustained. The Supreme Court reversed that judgment and upheld the indictment. 223 U. S. 512, 32 Sup. Ct. 244, 56 L. Ed. 531.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The section under which the indictment was found provides as follows:

"19. That all aliens brought to this country in violation of law shall, if practicable be immediately sent back to the country whence they respectively came on the vessels bringing them. * * * The * * * expense of the return of such aliens, shall be borne by the owner or owners of the vessels on which they respectively came; and if any * * * owner, * * * of any such vessel * * * shall make any charge for the return of any such alien, or shall take any security from him for the payment of such charge, such * * * owner, * * * shall be deemed guilty of a misdemeanor and shall, on conviction, be punished by a fine of not less than $300 for each and every such offense."

The controversy arose by reason of the fact that defendant at its office in Bremen sold to one Dossik tickets to New York and also return tickets for himself and his wife from New York to Bremen; thereafter the aliens were brought to New York on defendant's steamer Rhein.

[1, 2] The contention upon the demurrer was to the effect that whatever violation there had been of the terms of the statute was committed outside of the jurisdiction, to wit, in Germany. The demurrer conceded averments of the indictment that the Dossiks were brought to this country in violation of law and that they were ordered deported by competent authority. There was no such concession on the trial and the burden of proving these averments was on the government, since, as we have seen, the nineteenth section imposes a penalty only in the case of aliens "brought to this country in violation of law." Before considering the testimony by which it is sought to sustain these averments, it may be well to cite some passages from the Immigration Laws and Regulations. Section 2 contains a long enumeration of classes of aliens to be excluded. The first group includes among others idiots, imbeciles, insane persons, persons afflicted with tuberculosis or with loathsome or dangerous contagious disease, paupers, persons likely to become a public charge, and "persons not comprehended within any of the foregoing excluded classes who are found to be and certified by the examining surgeon—as being mentally or physically defective, such mental or physical defect being of a nature which may affect the ability of such alien to earn a living."

Section 26 provides:

"That any alien liable to be excluded because likely to become a public charge or because of physical disability other than tuberculosis or loathsome or dangerous contagious disease may, if otherwise admissible, nevertheless be admitted in the discretion of the Secretary of Commerce and Labor upon the giving of a suitable and proper bond or undertaking, approved by said Secretary," etc.

In the Immigration Regulations provision is further made for admissions under bond. Rule 20 provides that:

"Where an alien is liable to be excluded because likely to become a public charge or because of physical disability and it is found that the alien is not afflicted with tuberculosis or with a loathsome or dangerous contagious disease and that he is otherwise admissible, and, after notice of his right to do so, the alien signifies his intention of applying for admission under bond, the board of special inquiry shall not pass upon the alien's right to enter as in other cases, but shall make special finding of fact in the premises and report

the same, including the certificate of the medical examiner, to the immigration officer in charge, who shall forward the report, together with his recommendation to the Secretary of Commerce and Labor, through the Commissioner General of Immigration. If in the exercise of the discretion conferred by law, the Secretary decides to admit the alien, a bond will be required," etc.

· The facts shown by the record are as follows: Some time about the latter part of November, Dossik applied in Bremen for his passage to this country. The agents of the steamship sold him round trip tickets. They testified that they did so because he told them that he and his wife were going to America to make a short visit to two of their children who were living there. Dossik testified that he told them he expected to stay with his children and not return. In the view we take of this case it is unimportant which account is correct. Upon arrival the aliens were examined by the government surgeons, who certified as to both that they were "physically defective, and such physical defect is of a nature which affects the aliens' ability to earn a living. Has senility." The aliens and these certificates next came before a board of special inquiry (December 17, 1910), which found that:

"The aliens are likely to become a public charge for the following among other reasons: They are both aged, decrepid, and incapable of self-support; they have no one in this country legally obligated to render them any assistance; while they have about $200, it is insufficient in our opinion to provide for these aged aliens; the witness, a son-in-law, appearing is in no position to give them the necessary assistance. Upon all the facts, including incidentally the medical certificates, we find that the aliens are persons suffering from physical defects of such a nature that may and will affect their ability to earn a living.

"Aliens informed of their exclusion, right of appeal and that they will be returned at the expense of the steamship company. Aliens excluded and ordered deported."

The trial judge apparently concluded that this deliverance of the board of special inquiry ended the matter, as no doubt it would if the other provisions of the statute had not been invoked. We do not concur with him because we are convinced from this record that such provisions were invoked. If strictly construed the certificate of the board was premature; it does not state that the alien was notified that he had a right to apply to the Secretary of Commerce and Labor for admission under bond. Rule 20 provides that until he has been given such notice, so that he may signify his intention of making such application, the "board of special inquiry shall not pass upon the alien's right to enter."

[3] But whether premature or not, and whether or not the statement in the board's minutes that the alien was informed of his "right of appeal" means that he was then given the notice which rule 20 requires, the fact is that the Secretary did admit the Dossiks on April 22, 1911, upon the giving of a bond in the sum of $500 for each of them. Manifestly these aliens were within the class covered by section 26, above quoted, whose admission to or exclusion from this country is determined finally, not by the action of the board of special inquiry, but by the exercise of the discretion of the Secretary. There is no specific proof of the various steps which brought the matter before that officer; but we must assume that the Secretary as a public officer acted

in conformity to law, and since it is conceded that he did exercise his discretion by admitting the aliens, upon giving a bond, it is to be presumed that the matter came before him in the regular course of official business, in conformity with the provisions of rule 20.

It appears therefore conclusively that Dossik and his wife, after being fully examined, were, in conformity to the provisions of the Immigration Act, admitted into the United States. How, in view of that fact, it can be held that in selling them return tickets the owner of the steamship made charge or took security for the return of "aliens brought to this country in violation of law," we are unable to conceive.

When the case was before the Supreme Court, it was held that, although the original acceptance of the money in Bremen was an act outside of the jurisdiction, the retention of that money here, after being advised that the aliens were to be excluded and deported, would be an act within the jurisdiction. It now appears that the so-called return ticket or "passage order" entitled the holder either to passage to Bremen or to the return of the amount paid therefor; that the defendant was at all times ready to make such repayment, provided the passage order were returned; and that this was not done because the passage order was taken from the alien by the authorities at Ellis Island and was retained by the government officers for more than two months, until after the grand jury had found this indictment. Thereupon it was returned to him with the statement that he could get some money on it. Although the disposition we have made of the other point in the case makes it unnecessary to consider the contentions of defendant as to the effect of these transactions, we note them to express our disapproval.

The judgment is reversed.