**LLOYD SABAUDO SOCIETA ANONIMA PER AZIONI v. ELTING, Collector of Customs.**

District Court, S. D. New York.
Sept. 2, 1930.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for plaintiff.

Charles H. Tuttle, of New York City (Walter H. Schulman, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The complaint contains fifteen causes of action, to recover fifteen fines paid under protest by the plaintiff, a steamship company, to the defendant, collector of customs of the port of New York. The fines were imposed by the Secretary of Labor, at various times from 1923 to 1926, under the provisions of 8 USCA § 145. The first two sentences of this section read as follows:

"It shall be unlawful for any person, including any transportation company other than railway lines entering the United States from foreign contiguous territory, or the owner, master, agent, or consignee of any vessel, to bring to the United States either from a foreign country or any insular possession of the United States any alien afflicted with idiocy, insanity, imbecility, feeble-mindedness, epilepsy, constitutional psychopathic inferiority, chronic alcoholism, tuberculosis in any form, or a loathsome or dangerous contagious disease, and if it shall appear to the satisfaction of the Secretary of Labor that any alien so brought to the United States was afflicted with any of the said diseases or disabilities at the time of foreign embarkation, and that the existence of such disease or disability might have been detected by means of a competent medical examination at such time, such person or transportation company, or the master, agent, owner, or consignee of any such vessel, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000, and in addition a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, for each and every violation of the provisions of this section, such latter sum to be delivered by the collector of customs to the alien on whose account assessed. It shall also be unlawful for any such person to bring to any port of the United States any alien afflicted with any mental defect other than those above specifically named, or physical defect of a nature which may affect his ability to earn a living, as contemplated in section 136 of this title, and if it shall appear to the satisfaction of the Secretary of Labor that any alien so brought to the United States was so afflicted at the time of foreign embarkation, and that the existence of such mental or physical defect might have been detected by means of a competent medical examination at such time such person shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $250, and in addition a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, for each and every violation of this provision, such latter sum to be delivered by the collector of customs to the alien for whose account assessed."

It will be seen that the first sentence empowers the Secretary to exact a fine of $1,000 for transporting aliens suffering from enumerated mental and physical diseases, and that the second sentence authorizes him to impose a fine of $250 for transporting aliens afflicted with any other mental defect or

physical defect sufficient to affect their ability to earn a living. The fines shall be assessed, however, only in cases where it appears to the Secretary's satisfaction that the ailment or disability might have been detected by a competent examination at the time of embarkation.

In all fifteen cases, the plaintiff had transported from Italy to the United States aliens who were found upon arrival here to be inadmissible because of disease or defects. In each instance, the physicians who examined the alien at Ellis Island rendered a written opinion that the existence of the disease or disability might have been detected by a competent medical examination at the time of embarkation in Italy. The plaintiff was notified by the Secretary of Labor that a fine was under consideration, and was given a period of sixty days within which to have a hearing in the matter. The plaintiff protested against the imposition of a fine, stating generally in letters, and in one or two cases submitting affidavits, that thorough medical examinations of all aliens seeking passage on its boats were conducted by competent doctors at the port of embarkation. Fines were nevertheless imposed, the Secretary of Labor declaring that, while he had given consideration to the matters presented to him by the plaintiff, such matters did not overcome the force of the opinion of the examining physicians at Ellis Island.

At the trial, the plaintiff introduced testimony tending to show in considerable detail that all prospective passengers were put through at least two medical examinations in Italy, and that the doctors who conducted the examinations were skilled in their profession and were diligent in carrying out the examinations. This testimony was objected to, but was admitted, subject to motion to strike out. The plaintiff also offered evidence tending to show that the decisions in these and similar fine cases had been generally unfavorable to the steamship companies. This evidence was also admitted, subject to being stricken out on the defendant's motion. By stipulation the case was tried before a jury of one.

In seeking recovery of the fines paid, the plaintiff has advanced three arguments that apply to all fifteen causes of action. One ground of attack is that section 145 is unconstitutional. Another ground is that the Secretary's power to impose a fine exists only in cases where in fact no competent medical examination was enforced by the steamship company. A third is that the Secretary's action in all fifteen cases was arbitrary and unfair. In addition to these points common to all fifteen fines, there are additional contentions against the validity of several of the fines.

■ 1. Section 145 is from the 1917 act, the change made in 1924 having been an increase in the amount of the fines. An earlier act, imposing a fine of $100 in cases of aliens suffering from loathsome or dangerous contagious diseases, was construed and held constitutional in Oceanic Steam Navigation Co. v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013. The plaintiff assails the constitutionality of the present section, pointing out that the fine in cases of loathsome or dangerous contagious diseases is ten times as large as the fine sustained in the Stranahan Case, that a fine of $250 for physical or mental defectives has now been added, and that both fines include also the amount of the passage money, which was not a part of the fine under the earlier act. It is claimed that fines in these amounts are excessive, especially in view of the fact that they are leviable upon the decision of an officer of the executive branch without judicial action of any sort, and it is said that the plaintiff's property has thus been taken without due process of law. The power of Congress to place upon steamship companies the duty of subjecting prospective passengers to a competent medical examination and of rejecting those who fail to pass the test cannot be questioned. So, also, as to the imposition of a fine for failure to perform this duty, and as to delegating to the Secretary of Labor the right to decide in particular cases whether the duty has been performed or neglected. These propositions were settled by the Stranahan Case. The policy behind this statute is plain. In order to strengthen the barriers against the entrance of diseased and defective foreigners, many of whom were slipping past the examiners at our ports, Congress saw fit to require the steamship companies to conduct examinations on the other side. The desirability of preventing the spread of contagion during the voyage probably also played a part. The requirement of refund of the passage money must have been due to an appreciation of the hardship on the rejected alien who should never have been brought here, as well as to a sense of increasing the amount of the punitive fine. The only point not settled by the Stranahan Case is the reasonableness of the penalties under the present statute. It seems clear to me that the fairness of the scale of fines is a legislative rather than a judicial matter, and that protests on the score of ex-

cessiveness should be addressed to Congress and not to the courts. It certainly cannot be said that the fines now prescribed are outrageously high and manifestly out of line with the prohibited offense, and, until that point is reached, the statute is unassailable on the constitutional side. Cf. Navigazione Libera Triestina v. United States (C. C. A.) 36 F.(2d) '631, where a fine of $1,000 under another section of the 1924 act was upheld.

2. The plaintiff further contends that the jurisdiction of the Secretary of Labor to impose fines exists only where no competent examinations on the other side have been held, and that the evidence shown to the court establishes that competent examinations were held. In other words, the contention is that, if the actual fact is that competent examinations were conducted by the plaintiff, the Secretary lacked power to impose the fines, whether or not any proof as to the character of the examinations was laid before him. It seems to me that there is no merit in the argument. The statute reposes in the Secretary of Labor the power to determine whether a competent examination abroad might have revealed the presence of the disease or disability. The facts of a given case are to be determined by the Secretary upon the proof before him. If a steamship company should be permitted to litigate the crucial point in court upon additional evidence, the proceedings of the Secretary in every case would be utterly futile. It is true that there is a passage in the Stranahan opinion which tends somewhat to bear out the plaintiff's argument, but the opinion as a whole does not support it, and the words of the statute itself show clearly that the. Secretary, not the courts, is to decide whether a thorough examination had been held. My conclusion is that the Secretary, except in certain cases in which questions of law were involved and which will be discussed later, had power to entertain the proceedings.

3. We come then to the contention that the Secretary's action in these fifteen proceedings was arbitrary. In thus complaining of the outcome of proceedings before an administrative officer, the plaintiff must be prepared to show that a fair hearing was denied, or that there was an erroneous application of law by the officer, or that there was lacking any proof to sustain the determination. It does not suffice to show a state of facts upon which the court might reach a different conclusion from that arrived at by the administrative officer.

In each of these cases, the Secretary had before him the certificate or opinion of the examining doctors at Ellis Island to the effect that the disease or disability with which these aliens were afflicted might have been detected by a competent medical examination at the time of embarkation. No grounds for this opinion were set forth, but it must be presumed that the doctors had sufficient basis in fact for their opinion. In their scrutiny of the alien, they had a chance to see the outward and visible signs of the disease or disorder, as well as to form an estimate as to the length of time such symptoms must have been detectable upon careful examination. The mere opinion without supporting data might be insufficient in a lawsuit before a judicial tribunal, but it cannot fairly be said to be entitled to no weight in an administrative proceeding of this sort. United States v. Day (C. C. A.) 33 F.(2d) 267. The Secretary had also before him the written protest of the plaintiff, asserting that competent examinations were conducted. Upon such proof, the Secretary was satisfied that a fine should be imposed. It has been argued that the Secretary should not treat the medical certificate or opinion as conclusive upon him, although the Supreme Court in the Stranahan Case indicated that the Secretary would be warranted in attaching conclusive weight to it. Be that as it may, the records of these proceedings before the Secretary do not indicate that he considered himself bound by the medical certificate or opinion. On the contrary, he afforded to the plaintiff the opportunity to convince him that the medical certificate or opinion was erroneous.

It is plain, therefore, that these hearings, in the main, involved questions of fact only, that the plaintiff was duly notified of the proceedings and given a chance to show that fines should not be imposed, and that the Secretary had before him sufficient data upon which to act by way of imposing fines. It is likewise plain that the plaintiff, in seeking review of the decisions of the Secretary, cannot introduce evidence not before the Secretary. The question before the court is not whether, as an original matter, the fines should have been imposed; the issue is whether the Secretary had the authority to impose them upon the facts laid before him. It is therefore my opinion that, as to all the causes of action which may be regarded as routine medical cases, cases where the alien has sought entrance into the United States for residence and has been excluded upon medi-

cal grounds, the plaintiff has no grievance which the court may take notice of.

4. The fifth cause of action is for recovery of the fine imposed for bringing one Capoldo to the United States, Capoldo having been afflicted with trachoma. He wished to pass through the United States in transit to Canada. He was excluded. The plaintiff claims that, since Capoldo's destination was Canada, the fine should not have been levied. I do not agree. The danger of spread of the disease existed, although the alien's stay here was to be only temporary. There was also the risk that he might change his mind and remain here indefinitely, although unlawfully. It cannot be said that he was not "brought" to the United States by the plaintiff. Taylor v. United States, 207 U. S. 120, 28 S. Ct. 53, 52 L. Ed. 130, relied on by the plaintiff, is not analogous. I therefore hold that the Secretary had jurisdiction to impose the fine in the case of Capoldo.

5. In two of the proceedings, aliens found to be afflicted with ringworm were detained at Ellis Island, but were subsequently admitted to the United States after hospitalization and cure. These aliens were Rullo and De Sanctis. The admission was under section 159, title 8, USCA, providing for such admission in certain cases. Notwithstanding their ultimate admission, the plaintiff was subjected to fines in both cases, the fines of course not including the refund of the passage moneys. The ninth and eleventh causes of action are for recovery of these fines. I believe that in these two cases the Secretary misconstrued the statute and had no authority to impose the fines. There is implicit in section 145 the requirement that the alien concerning whose case the penalty is exacted must have been excluded from entry. It is expressly provided that the fine shall be $1,000 or $250, "and in addition a sum equal to that paid by such alien for his transportation, 'and' such latter sum to be delivered by the collector of customs to the alien on whose account assessed." These two aliens having actually been admitted, the portion of the fine equivalent to the passage money was not assessed and manifestly could not have been assessed in their cases, and in my opinion the two portions of the fine are indivisible. That the purpose is to permit the exaction of a fine only in cases where the alien has been excluded would seem to be clearly indicated also by the fourth sentence of the section, to the effect that, where an alien accompanying a rejected person who appears to be helpless is also "excluded," the fine shall include the passage money paid by such accompanying alien in addition to the other elements of the fine. Norddeutscher Lloyd v. United States (C. C. A.) 213 F. 10, 14, although not involving this section, is a persuasive authority in support of the construction that I have indicated above. There the question was whether a fine could be imposed upon a steamship company for bringing two aliens to this country in violation of law and charging them for round-trip tickets, where the aliens, though physically defective, were admitted by the Secretary under bond. The statute (Act of February 20, 1907, now part of section 154, 8 USCA, in altered form) provided for a fine in cases where a charge for the return trip was made. Judge Lacombe, in holding that the fine could not be collected, said:

"It appears therefore conclusively that Dossik and his wife, after being fully examined, were, in conformity to the provisions of the Immigration Act, admitted into the United States. How, in view of that fact, it can be held that in selling them return tickets the owner of the steamship made charge or took security for the return of 'aliens brought to this country in violation of law,' we are unable to conceive."

The admission of aliens under section 159 does not lie in the Secretary's discretion; there is an absolute right of admission where the conditions specified in that section have been satisfied. These two aliens therefore had the right to come here, in spite of their diseased condition at the time of leaving Italy, and the plaintiff committed no wrong in bringing them, even with notice of their ailments. I am therefore of the view that, where diseased or defective aliens are lawfully admitted to the United States, no fine for bringing them here can be laid upon the steamship company. The plaintiff is entitled to a verdict for the amounts demanded in the ninth and eleventh causes of action.

6. The fifteenth cause of action concerns the fine of $1,212.63 imposed for bringing one Nelli to the United States. The record before the Secretary shows that Nelli was found to be an imbecile, that the medical officers certified that this condition might have been discovered at embarkation had a thorough medical examination been conducted, and that the fine was assessed. It also appeared in the record, however, that Nelli's father, an American citizen, filed a petition with the Commissioner General for the issu-

ance of a nonquota visa to the immigrant pursuant to the Immigration Act of 1924 (43 Stat. 153), and that he revealed in his petition that his son was feeble-minded and epileptic. The Commissioner General nevertheless approved the petition and informed the Secretary of State of his decision, and the nonquota visa was accordingly given to Nelli. The plaintiff's doctors detected Nelli's condition at the time of embarkation, but accepted him as a passenger in reliance upon the fact that the United States authorities, with knowledge or notice of his condition, had issued a nonquota visa to him. The rejection of Nelli was not only proper but was mandatory, despite his possession of a nonquota visa. Sections 202, 209, 213, 223, 8 USCA. A mistake had been made in the issuance of the nonquota visa, but it seems to me that the plaintiff's officers, impressed as they doubtless were by the authorization for the visa coming from the Commissioner General and the Secretary of State, were not delinquent in taking this alien as a passenger. They were warranted in the belief that, in carrying Nelli on their ship, they were not committing an unlawful act. I think that Judge Thacher's decision in Spanish Royal Mail Line Agency, Inc., v. United States (D. C.) 45 F.(2d) 404, decided April 10, 1928, is in point. The defendant argues that the plaintiff might have protected itself by taking indemnity from this alien, but, unless I read the statutes wrong, the taking of any security or indemnity is prohibited and would have subjected the plaintiff to a fine under section 154. To hold that the plaintiff should have known all the intricacies of the immigration statutes, and should have been aware of Nelli's ineligibility, seems to me wholly unreasonable. The fact is that the initial mistake was made by the Washington authorities who had plain notice of the alien's condition and nevertheless authorized the issuance of a visa, and it was this mistake which misled the plaintiff. I will therefore direct a verdict for the plaintiff upon the fifteenth cause of action.

 7. In two of the cases, those of Sbragia and Crimi, the rejections were for physical defects of a nature which might affect the alien's ability to earn a living, and the fines were imposed upon the second sentence of section 145. As a special ground of recovery in these causes of action, the plaintiff presses the point that, although these aliens were in fact excluded, they might have been admitted in the discretion of the Secretary of Labor upon giving bond, as provided in section 158, and that therefore the plaintiff had a right to bring them here, in order that the Secretary might use his discretionary power in favor of admitting them. Section 158 provides that aliens liable to be excluded because likely to become public charges or because of physical disability (other than tuberculosis or loathsome or dangerous contagious disease) may be admitted under bond in the discretion of the Secretary of Labor. Sbragia and Crimi, while strictly excludable, were eligible for admission under this section in the Secretary's discretion, and the argument is that it was lawful for the plaintiff to bring them here, since otherwise they would have been unable to lay their cases before the Secretary for exercise of his discretion. There is force in this argument, and there are cases which, by inference at least, tend to support it. The difficulty, however, is that section 145 emphatically declares that "it shall be unlawful" to bring such aliens to the United States. How can the plaintiff have the right to do what is thus specifically made unlawful? To accept the argument would amount to deleting the second sentence of section 145. A steamship company could bring here the halt, the lame, and the blind without pretense of examination and without fear of penalty. It cannot be that section 158 was intended to modify or diminish section 145, for the former is from the 1917 act, while the latter in its present form is from the 1924 act and represents the last word. My conclusion therefore is that the Secretary had power to impose fines in these two cases.

Dollar S. S. Co. v. Hyde (C. C. A.) 23 F.(2d) 910, is cited by the plaintiff, but it seems to me to be distinguishable. The facts in the Hyde Case were that the alien, suffering from leprosy and excluded on that ground, had had a seven years' prior residence in the United States, by reason whereof the Secretary had discretionary power to admit him, not under section 158, but under section 136. Section 145 in the last sentence provides that no fine shall be imposed in cases of aliens who by any of the exceptions to section 136 are exempted from the excluding paragraphs of that section. The court held that the Secretary of Labor had no power to impose a fine in such a case, since the alien must be permitted to invoke the exercise of such discretion under section 136 by presenting himself at a port of entry. In the instant case, the aliens were clearly excludable under section 136. The section imposing the

fine makes no mention of exceptions under section 158, as it does of exceptions under section 136.

I think that there is a clear distinction between the cases of these two aliens and the cases of Rullo and De Sanctis which I have discussed above. In the first place, these two were actually excluded while Rullo and De Sanctis were admitted. In the second place, these two were excludable aliens; their only chance of admission lay in an appeal to the Secretary's discretion. Rullo and De Sanctis, on the other hand, were not excludable aliens. As already explained, they had a right to enter the United States. The plaintiff therefore had a right to bring them to the United States without subjecting itself to penalties, but this is not true in the cases of Sbragia and Crimi.

8. In the case of Guiseppe Fusco, barred because of tuberculosis, the alien claimed a prior seven consecutive years' domicile here. But there was no finding as to the truth of this statement in the records before the immigration authorities. The alien was seeking readmission after an absence of four years which offhand seems hardly to be a "temporary absence." The plaintiff did not call the Secretary's attention to the alleged prior residence of the alien. It raised the point for the first time in this action. The case of Fusco does not therefore fall within the Hyde Case, supra, and in my opinion the Secretary had authority to exact the fine.

All of these cases arose prior to the time when the arrangement of having United States surgeons make medical examinations in Europe was put into effect. Presumably fines against steamship companies under section 145 could not properly be imposed in cases where prospective immigrants had undergone methodical inspection by our own surgeons in Europe. The fact that they had passed such inspection would be most convincing proof that any disease or defect found on arrival here did not exist in discoverable condition at the time of embarkation. That question, however, is not presented in this suit.

From what has been said, it follows that the defendant's motion to strike out all testimony relative to the physical examinations conducted by the plaintiff in Italy will be granted. I direct a verdict for the defendant upon all causes of action, except the ninth, eleventh, and fifteenth, and as to these three I direct a verdict for the plaintiff. The plaintiff will have a verdict for $2,412.63, with interest on $200 from June 23, 1923, on $1,000 from February 28, 1927, and on $1,212.63 from May 26, 1925. No costs to either party.