## COMPAGNIE GENERALE TRANSATLANTIQUE v. UNITED STATES (three cases).

## INTERNATIONAL MERCANTILE MARINE CO., Inc., v. UNITED STATES.

### Nos. 181–184.

Circuit Court of Appeals, Second Circuit.

July 7, 1931.

---

Robert E. Manley, Acting U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Joseph P. Nolan, of New York City, and Roger O'Donnell, of Washington, D. C., for appellee Compagnie Generale Transatlantique.

John M. Lyons, of New York City, and Roger O'Donnell, of Washington, D. C., for appellee International Mercantile Marine Co., Inc.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The foregoing actions were brought by the respective steamship companies to recover sums of money paid by them as fines imposed by the Secretary of Labor under the provisions of section 9 of the Immigration Act of 1917 (39 Stat. 880). During the period from June 8, 1920, to December 22, 1921, inclusive, the plaintiffs brought to the United States eighty aliens, all except one of whom were found to be illiterate; the remaining one having been found to be an idiot. At the time of arrival all the aliens were applying for permanent admission to this country. They were all ordered excluded by the immigration authorities under section 3 of the Immigration Act of 1917 (8 USCA § 136), and the orders of exclusion were affirmed by the Secretary of Labor. Thereafter he saw fit to change his mind, and each of the illiterate aliens was admitted to the United States temporarily under bond.

Fines for bringing the illiterate aliens to the United States were imposed upon the plaintiffs under section 9 of the Immigration Act at the rate of $200 per alien and in addition a sum representing the return passage money for each alien. These fines were paid to the collector of customs by the plaintiffs under protest. The passage moneys were repaid to the plaintiffs by the collector because they were not needed by the aliens for their return passage after they had been temporarily admitted. The return of the balance was refused because it had been "covered into the Treasury of the United States." Thereafter the plaintiffs brought these actions under the Tucker Act (24 Stat. 505) to recover the various fines of $200 which had been imposed. Judge McCormick, who conducted the trial of the four actions, directed judgments in favor of the plaintiffs for the recovery of the fines imposed upon the steamship companies for bringing in the seventy-nine aliens found to be illiterate.

The United States has appealed. It seeks a reversal on the ground that fines could be lawfully imposed for bringing to this country illiterate aliens seeking permanent admission, even though they were admitted temporarily, so long as their disabilities might have been detected prior to their departure from foreign ports by the exercise of reasonable precautions. The United States further objects to repayment of the fines assessed against some of the aliens because they were imposed and the money was covered into the Treasury more than six years prior to the commencement of the actions, and recovery was thereby barred.

Section 3 of the Immigration Act of 1917 (8 USCA § 136) provides for the exclusion of various aliens from the country, including idiots and illiterates. But it contains various provisos, one of which is the following: "Provided * * * That the Commissioner General of Immigration with the approval of the Secretary of Labor shall issue rules and prescribe conditions, including exaction of such bonds as may be necessary, to control and regulate the admission and return of otherwise inadmissible aliens applying for temporary admission." (8 USCA § 136(q).

Section 9 of the Immigration Act of 1917 (39 Stat. 880) made it unlawful for a transportation company to bring to any port of the United States any alien who is excluded by section 3 because unable to read, and provided that, "if it shall appear to the satisfaction of the Secretary of Labor that these disabilities might have been detected by the exercise of reasonable precaution prior to the departure of such aliens from a foreign port, such person shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $200, and in addition a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, for each and every violation of this provision, such latter sum to be delivered by the collector of customs to the alien on whose account assessed. * * * *"

Section 9 also contained the proviso: "That nothing contained in this section shall be construed to subject transportation companies to a fine for bringing to ports of the United States aliens who are by any of the provisos or exceptions to section three here-

of exempted from the excluding provisions of said section."

During the time when these aliens were being brought to the United States, the following rule had been issued by the Commissioner General of Immigration with the approval of the Secretary of Labor. It will be found in Rules of May 1, 1917, fourth edition, February, 1920, fifth edition, December, 1920, and sixth edition, September, 1921.

Rule 16, subdivision 2, provides: "Temporary admission of otherwise inadmissible aliens.—The ninth proviso to Section 3 authorizes the Bureau and the Department to issue rules and prescribe conditions to control and regulate the admission and return of otherwise inadmissible aliens applying for temporary admission. In cases in which aliens who are mandatorily excluded from permanent entry apply for the privilege of entering the United States temporarily, they shall be required to show that their temporary entry is an urgent necessity or that unusual and grave hardship would result from a denial of their request. * * *"

The principal question before us is whether a carrier is relieved from the penalties imposed under section 9 where it brings aliens who are temporarily admitted under the proviso of section 3 which we have quoted. A strong reason for holding that a fine should not be imposed for bringing to the United States an alien who, though excludable under the statute, is temporarily admitted, is because the portions of the fine, namely, the $200 and the return passage money, are, as Judge Patterson said in Lloyd Sabaudo Societa v. Elting (D. C.) 45 F.(2d) at page 409, indivisible. The carrier is required to pay the return purchase money to the collector in order to insure the alien against having to pay it, and section 9 provides that it shall be "delivered by the collector of customs to the alien on whose account assessed" in aid of that object. It is impossible to suppose that a carrier is required to pay the return passage money for the benefit of an alien who is not excluded. Because the Department recognized the absurdity of such a supposition, it repaid the return purchase money deposited by the plaintiffs in this case.

Moreover, where fines are imposed under section 16 of the Immigration Act of 1924 (8 USCA § 216) for bringing to the United States aliens having a wrong type of visa, the Secretary of Labor may admit them under the discretion given him by section 13 (d) of that act, 8 USCA § 213(d). But section 13 (f), 8 USCA § 213(f) provides that nothing therein shall "authorize the remission or refunding of a fine, liability to which has accrued. * * *" It is plain that, where Congress has wished to preclude the remission of fines imposed for bringing excludable aliens, who have been admitted under the discretion lodged in the Secretary of Labor, the matter has not been left to inference, but remission has been expressly prohibited.

It is said that, when a steamship company transports an alien, it ought to be able to know at the outset whether the transportation is lawful or not. But a fair answer to this contention is that a carrier would probably prefer uncertainty to paying fines. It cannot be maintained that the aliens were sent on a needless trip. They sought temporary admission and got it after first trying for permanent admission and failing to obtain it. We may assume that, if they had started out with the purpose of gaining only temporary admission and had first applied for that privilege, they would have obtained it just as they did in the present case. We cannot see why a change of intention should involve the payment of a fine.

In North German Lloyd v. Elting, 48 F.(2d) 547, where aliens liable to exclusion because of physical disability were in fact excluded, we held that a fine was properly imposed for bringing them. While we did not decide that it might not have been imposed, if the aliens had been admitted under the discretion vested in the Secretary of Labor, we cited Lloyd Sabaudo Societa, etc., v. Elting (D. C.) 45 F.(2d) 405, and Norddeutscher Lloyd v. United States (C. C. A.) 213 F. 10, in support of the conclusion that the carrier would incur no penalty under such circumstances.

In Lloyd Sabaudo Societa, etc., v. Elting (D. C.) 45 F.(2d) at page 409, Judge Patterson held that, where an alien was admitted in spite of physical defects for which he might have been excluded, a fine should not be imposed for bringing him to the United States. In Norddeutscher Lloyd v. United States, 213 F. at page 14, we held that fines could not be imposed for bringing aliens to the United States in violation of law and charging them for round trip tickets, if the aliens, though physically defective, were admitted under bond. These decisions are persuasive precedents in support of the result reached by the court below and they accord with the rule that a penalty ought not to be

imposed where the statutory warrant is not clear.

■ In the present case not only is all statutory warrant for the imposition of fines lacking, but the proviso of section 9, which we have quoted, specifically states that transportation companies shall not be subjected to fines for bringing aliens to ports of the United States where they are exempted from the excluding provisions of section 3. The illiterate aliens who were temporarily admitted were thus exempted by the ninth proviso of section 3 (8 USCA § 136(q), which left their admission to the regulation of the Secretary of Labor. The fines were therefore properly held recoverable except in the causes of action where recovery was barred because the fines were imposed and the money covered into the Treasury of the United States more than six years prior to the commencement of the actions.

The remaining question for consideration is whether section 1 of the Tucker Act, United States Code 28, section 41 (20), 28 USCA § 41(20), precludes recovery by the plaintiffs upon the causes of action where fines have been imposed and the money has been covered into the Treasury of the United States more than six years prior to the commencement of the actions. Section 1, so far as it applies to this situation, reads as follows: " * * * No suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after the right accrued for which the claim is made. * * * "

In Compagnie Generale Transatlantique v. United States, L 41/166, cause of action No. 1, where the immigrant was found to be an idiot, recovery of the fine was not allowed by the trial court, and the plaintiff took no appeal. In causes of action Nos. 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, and 15, the fines were not only imposed, but were covered into the Treasury of the United States more than six years prior to the commencement of the suit. In cause of action No. 10, the fine was ordered imposed and was covered into the Treasury less than six years prior to the commencement of the action. The plaintiff in the foregoing cause was held entitled to have judgment for $200 in each of the fourteen causes of action Nos. 2 to 15, both inclusive. If section 1 of the Tucker Act, supra, applies, recovery of all the fines, except the one sought to be recovered under cause of action No. 10, is precluded.

In Compagnie Generale Transatlantique v. United States, L 39/201, in causes of action Nos. 10, 11, 12, 13, 20, 21, 22, 23, 31, 32, 33, and 34, the fines were not only imposed, but were covered into the Treasury of the United States more than six years prior to the commencement of the action, but recovery of these fines as well as fines paid less than six years prior to the commencement of the action were allowed by the trial court. If section 1 of the Tucker Act, supra, applies, recovery of the fines sought to be recovered under causes of action Nos. 10, 11, 12, 13, 20, 21, 22, 23, 31, 32, 33, and 34 is precluded.

In Compagnie Generale Transatlantique v. United States, L 35/310, there was but one cause of action, and the fine was imposed and was covered into the Treasury of the United States less than six years prior to the commencement of the suit, so that section 1 of the Tucker Act has no application.

In International Mercantile Marine Co. v. United States, in causes of action Nos. 1, 2, 3, 6, 9, 10, 11, 12, 13, 18, 25, and 26, the fines were not only imposed, but were covered into the Treasury of the United States more than six years prior to the commencement of the action. If section 1, supra, of the Tucker Act applies, recovery of the fines sought to be recovered under causes of action Nos. 1, 2, 3, 6, 9, 10, 11, 12, 13, 18, 25, and 26 is precluded.

■ In all the causes of action where fines were imposed and covered into the Treasury more than six years before the commencement of action, the return passage money deposited as a part of the fine was returned to the carrier within six years prior to such time. It is contended by the plaintiffs that because of these returns there was a payment on account of each fine that prevented the six-year provision of the Tucker Act from running.

■ But section 1 of that act (28 USCA § 41 (20) is not a statute of limitations. The provision that no suit shall be brought against the United States unless "within six years after the right accrued for which the claim is made" is a jurisdictional requirement, compliance with which is necessary to enable suit to be maintained against the sovereign.

■ It has long been held that failure to bring action against the United States within six years after such rights have accrued is a bar to recovery. Ford v. United States, 116 U. S. 213, 6 S. Ct. 360, 29 L. Ed. 608; Finn v. United States, 123 U. S. 227, 8 S. Ct. 82, 31 L. Ed. 128; United States v. Wardwell, 172

U. S. 48, 19 S. Ct. 86, 43 L. Ed. 360; Louisville Cement Co. v. Int. Com. Comm., 246 U. S. at page 642, 38 S. Ct. 408, 62 L. Ed. 914. The statutory provisions under which recovery may be had are clear and mandatory, and no official has been authorized by repaying a portion of the fines or otherwise to waive the limitations enacted for the protection of the United States. Finn v. United States, 123 U. S. at page 233, 8 S. Ct. 82, 31 L. Ed. 128; Utah Power & Light Co. v. United States, 243 U. S. at page 408, 37 S. Ct. 387, 61 L. Ed. 791; Tucker v. Alexander, 275 U. S. at page 231, 48 S. Ct. 45, 72 L. Ed. 253; Ritter v. United States (D. C.) 19 F.(2d) at page 252.

It follows from the foregoing that the judgment in Compagnie Generale Transatlantique v. United States, L 41/166, should be modified so as to dismiss the complaint as to causes of action Nos. 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, and 15, and to allow only recovery of a fine of $200 upon cause of action No. 10, with $5 costs, instead of $2,800 and costs as heretofore allowed; that the judgment in Compagnie Generale Transatlantique v. United States, L 39/201, should be modified so as to dismiss the complaint as to causes of action Nos. 10, 11, 12, 13, 20, 21, 22, 23, 31, 32, 33, and 34, and to allow only recovery of fines of $200 upon each of the remaining causes of action, that is to say, of $4,400, and $5 costs, instead of $6,800 and costs, as heretofore allowed; that the judgment in Compagnie Generale Transatlantique v. United States, L 35/310, should be affirmed; that the judgment in International Mercantile Marine Co. v. United States, should be modified so as to dismiss the complaint as to causes of action Nos. 1, 2, 3, 6, 9, 10, 11, 12, 13, 18, 25, and 26, and to allow only recovery of fines of $200 upon each of the remaining causes of action, that is to say, of $3,600 and $5 costs, instead of $6,000 and costs as heretofore allowed.

It is unnecessary to order a new trial in any of the cases for they were all tried without a jury and there were special findings of fact. Ft. Scott v. Hickman, 112 U. S. 150, 5 S. Ct. 56, 28 L. Ed. 636; Howbert v. Penrose (C. C. A.) 38 F.(2d) at page 581, 68 A. L. R. 820; Churchill v. Buck (C. C. A.) 102 F. at page 44; Routzahn v. Mason (C. C. A.) 13 F.(2d) 702.

Judgment is affirmed in Compagnie Generale Transatlantique v. United States, L 35/310, and in the other cases the judgments should be modified in accordance with the views above set forth and, as modified, affirmed.