**LLOYD SABAUDO SOCIETA ANONIMA PER AZIONI v. ELTING, Collector of Customs.**

No. 125.

Circuit Court of Appeals, Second Circuit.

Feb. 1, 1932.

See, also, 46 F.(2d) 315.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, and Gaspare M. Cusumano, all of New York City (Delbert M. Tibbetts, of New York City, of counsel), for plaintiff-appellant.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

■ At the trial below, the plaintiff offered evidence, not presented to the Secretary of Labor, in support of its claim that the aliens had been subjected to a competent examination abroad and its exclusion is now claimed to have been erroneous. Such a contention fails to give effect to the language of the statute and the decision in Oceanic Steam Navigation Company v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013. The basis for the imposition of such fines is two-fold, (1) the fact of bringing aliens to this country who belong in the classes mentioned; (2) the determination by the Secretary of Labor that the existence of the cause of exclusion might have been detected by a competent examination at the time of foreign embarkation. The fact that the aliens had been brought to this country was not in controversy; neither was their condition when they arrived; and the only real issue of fact related to the decision of the Secretary of Labor on the question of detectability of the disability abroad. The plaintiff insists that it was entitled to a trial de novo on this issue, reading the statute to mean that its liability to fines for infringement is dependent solely upon the decision of a court of competent jurisdiction as to the fact, as an absolute fact, of detectability by competent examination abroad. The government takes the position that the review of the decision of the Secretary of Labor is limited to determining whether it was arbitrary or capricious. We think the government is right in this regard, and that the exclusion of the offered evidence was not error. Under the decision in the Stranahan Case, supra, and that in Hampton & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624, the power of Congress to confer upon an executive officer authority to enforce laws relating to matters exclusively within its control and imposing such reasonable fines for their infraction as Congress may see fit to permit to be exacted by such officer has been recognized. That is exactly what has been done in the law here involved. Determination of the fact of foreign detectability of an excluding condition has been left to what will satisfy the Secretary of Labor in that regard. This means that whatever the Secretary of Labor decides, provided his decision is neither arbitrary nor capricious, is final. Wallis v. United States (C. C. A.) 273 F. 509. Cases like In re Fassett, 142 U. S. 479, 12 S. Ct. 295, 35 L. Ed. 1087, and Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938, are not in point. Here the plaintiff had a fair opportunity to present all its evidence to the Secretary of Labor, and, as his decision on the facts was well within the evidence, all rights the plaintiff had on that score have been protected.

■ Nor was it error to treat the certificates of the medical examiners as evidence of the facts as therein stated. They were reports of examinations made in the performance of their official duty, and were a part of the record before the Secretary. United States ex rel. Fenerstein v. Tod (C. C. A.) 296 F. 127. Compare U. S. v. Day (C. C. A.) 33 F.(2d) 267.

■■ Being justly satisfied that a competent examination at the time of embarkation would have shown that these aliens were all in excluded classes, the Secretary had no power to refrain from imposing the statutory fines upon proof that the aliens were examined abroad by competent doctors who failed to discover their actual condition. The statute requires a fine whenever the Secretary is satisfied that a competent examination would have disclosed the condition of the alien. It takes no account of any mistakes an examiner might make and still be a competent man. The burden placed upon a steamship company transporting aliens to our shores is not satisfied by its employing competent examiners to make examination of aliens at the time of embarkation, but it is charged with whatever knowledge it would obtain from a competent examination of each alien at that time. Compare Chicago, Burlington & Quincy R. R. Co. v. U. S., 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582. These cases are unlike Compagnie Francaise de Navigation a Vapeur v. Elting (C. C. A.) 19 F.(2d) 773, and North German Lloyd v. Elting (C. C. A.) 54 F.(2d) 997, in each of which the quota or nonquota status of the aliens was involved and could be determined with finality only upon arrival here. Excluding disease or physical or mental defects could be discovered just as well abroad as in this country. Accordingly all the judgments in favor of the defendant are affirmed. North German Lloyd v. Elting (C. C. A.) 48 F.(2d) 549.

■ The two cases where diseased aliens were admitted when cured will be considered together, although one was in transit to Canada and one was not. There is much force to the claim of noninfringement of the statute

where the alien is actually permitted to enter notwithstanding his condition. In Dollar S. S. Line v. Elting (C. C. A.) 51 F.(2d) 1035, we held that a diseased alien was not brought here within the meaning of the statute when brought to the port of New York en route by water to Cuba, although she had a transit visa and at least when she arrived at New York, if not before, made up her mind to apply for permanent entry. The question now before us was then expressly left open. These two aliens were admitted. The liability to fine of a steamship company for bringing aliens who are admitted was doubted in North German Lloyd v. Elting (C. C. A.) 48 F.(2d) 549; and in Compagnie Generale Transatlantique v. United States (C. C. A.) 51 F. (2d) 1053, we said that, where aliens were admitted, there was "strong reason" for holding the fine and the return passage money which the statute requires to be collected and given to the excluded alien an indivisible penalty. If the statute be interpreted literally, it may be said that a carrier becomes subject to the penalty for bringing aliens to this country who are suffering from excluding physical or mental defects or disease ascertainable by competent examination at the time of embarkation regardless of their admission through the exercise of lawful discretion when they arrive in this country. Yet, if Congress had so intended, it is reasonable to believe that it would have said so and provided for a fine in instances where there was actual admission without including the return of passage money in the penalty. Surely there could have been no intent to enrich an excludable alien, admitted as an act of grace, at the expense of the carrier. That would have the effect of providing such aliens with free passage to this country whenever they were fortunate enough to secure admission in spite of their disabilities, and to put a premium upon attempts by them to get in under discretionary rulings. In our opinion, the fine and return passage money constitute one indivisible penalty, and that when aliens are actually admitted no penalty for bringing them here may lawfully be imposed under this statute. Compagnie Generale Transatlantique v. United States, supra; Company

Norddeutscher Lloyd v. United States (C. C. A.) 213 F. 10. The judgments in these two cases are affirmed.

█ The imbecile was a boy 16 years old named Renzo Nella. His father was a naturalized American citizen. He and his daughter went from this country to Italy in May, 1924, to bring the boy back with them. Application for an immigration visa was made to the American consul at Leghorn and at first denied. Later, after application to the Department of State at Washington, which included a disclosure of the fact the boy was epileptic and defective, was made, a nonquota visa was authorized on September 3, 1924, to be issued to the alien. Issuance of the nonquota immigration visa was approved by the Department of Labor, and it was issued to Renzo Nella after an application dated October 23, 1924.

When he arrived at New York, an examination having disclosed his excluding condition and the fact that it could have been detected by a competent examination at the time of foreign embarkation, he was excluded. Indeed, no point is made that the plaintiff lacked knowledge of his condition. It relied wholly upon the representation that the boy had been given special consideration and assumed that he would therefore be admitted because he had a visa. Notwithstanding this, the plaintiff was bound to act with knowledge of the law and to know that it could not rely on an immigration visa to show that the alien was entitled to admission when he was in fact within one of the classes excluded. Possession of a visa left the alien's right to admission still dependent upon his ability to satisfy the requirements of the immigration laws. The Immigration Act of 1924 was then in effect, and expressly so provided. 8 USCA § 202(g); Chang Chan v. Nagle, 268 U. S. 346, 45 S. Ct. 540, 69 L. Ed. 988. The judgment in this case is reversed. A verdict for the defendant should have been directed and judgment entered thereon.

All judgments affirmed except that in the Nella Case. The judgment in that cause is reversed.