## HAMBURG–AMERICAN LINE v. UNITED STATES.

### No. 350.

Circuit Court of Appeals, Second Circuit.

May 8, 1933.

John M. Lyons, of New York City (Roger O'Donnell, of Washington, D. C., of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Frank Chambers and George B. Schoonmaker, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued under the Tucker Act (24 Stat. 505) to recover for money paid to discharge a fine levied by the Secretary of Labor as a penalty for bringing in an alien without visa under section 16 (a) of the Quota Act of 1924 (8 USCA § 216 (a). The complaint alleged that the plaintiff was a common carrier—the owner of a line of steamers—which had in 1928 brought to the port of New York one, O'Reilly, an alien, who applied for admission as a returning resident, and was excluded as an immigrant without visa. The Commissioner of Immigration thereupon fined it $1,000, together with $140 return passage money. O'Reilly was a native Irishman, who had acquired a residence in the United States, had left in June, 1928, and was coming back. He had failed to get a return permit as provided for in section 10 of the Quota Act (8 USCA § 210), but he was eventually admitted, though for what reason does not appear. Thereafter the Secretary of Labor imposed a fine of $1,000, remitting the passage money. The plaintiff paid under protest and the action was in part to recover the fine; there were other causes of action not here relevant. The defendant answered without material denials, and alleged as a defence that the plaintiff had been negligent in inquiring as to the status of the alien, whose inadmissibility was apparent. The court dismissed the complaint on the pleadings, and the plaintiff appealed.

The question presented is whether a carrier is liable to a fine under section 16 of the Quota Act of 1924 for bringing an alien to the United States who has been admitted in the past, has acquired a residence, has left on a temporary visit without procuring a permit, comes back without a visa, and is eventually admitted a second time. Section 16 (a) broadly provides that it shall be an offence to bring in any alien without a visa; no exception is made as to those who may be admissible under section 13 (b), of the Act (8 USCA § 213 (b). It is just possible that Congress intended to fine carriers who brought in aliens who had no visa, even though armed with a satisfactory permit. That, we must own, would be an extreme

penalty, but section 16 (b) of the act (8 US CA § 216 (b), gives the Secretary a discretion, and it may have been intended to put a carrier to the hazard that the permit would be rejected, especially as it may not be conclusive of the fact, section 10 (f) of the act (8 USCA § 210 (f). The final decision must be made in this country, and perhaps the carrier's opportunity under section 16 (c) of the act (8 USCA § 216 (c) to secure remission of the fine on the ground that he had made all reasonable inquiry in advance, was thought enough. Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. 337. The contrary was ruled in Rederiaktiebolaget, etc., v. U. S., 61 F.(2d) 808 (C. C. A. 9), where indeed the court appears to have gone further by way of dictum, and to have held that returning aliens were not within section 16 at all. It would follow that the section would not even cover a case where they were excluded. To that we cannot agree. However, for argument we will assume that the statute does not apply when they have satisfactory permits, reserving the point; but it does not seem to us consonant either with the letter, or the intendment of the law, to say that when they have neither a visa, nor a satisfactory permit, it is lawful to bring them here. If an exception is to be made to the language of section 16, it must be at least so confined as to preserve its purpose.

The plaintiff argues that, however that may be, as O'Reilly was finally admitted, the fine could not accrue in any event. From this position two separate questions arise: First, whether the Secretary had power in his discretion to admit O'Reilly at all; second, whether if he did, he could fine the plaintiff. As to the first; section 10 provides for the issue of a permit, and subdivision (f), that the section as a whole shall not make the permit the only evidence that the alien is returning from a sojourn. However, section 10 does not profess to declare what is the effect of having a permit, or of having none; it is section 13 (b) which alone authorizes the admission of "immigrants" without visa. Subdivision (a), § 13 (8 USCA § 213 (a), requires a visa of all, and would be peremptory against those returning from a sojourn, were it not that subdivision (b) exempts from the class so excluded those who have lived here, and are coming back from a visit; but in that case only as may be provided by regulation. The whole situation then is this; all "immigrants" must produce visas except those of O'Reilly's class; they may be admitted only according to regulation, and they may get permits which section 10 does not make the only competent evidence. What other evidence shall be competent, and how far permits shall be evidence, therefore depend upon the regulations.

The pertinent regulations are Rule 3, subdivision F, paragraphs 1 and 3, and subdivision I, paragraph 2. Paragraph 1 of subdivision F excepts those who have permits from the class of whom visas are required; it implies that those who have neither visa nor permit shall not be admitted. This is confirmed by paragraph 3, which further extends the class of admissibles to those whose permits may have expired en route. Paragraph 2 of subdivision I makes the permit only prima facie evidence, and requires the alien generally to satisfy the officials. Thus the regulations as a whole require a permit of all aliens in O'Reilly's class, though, in the limited case of paragraph 3 of subdivision F, it may have expired. But there seems to be no doubt that returning aliens must have either visa or permit of some kind. All this is in "implementation" by regulation of the privilege given by section 13 (b).

■ Although subdivision (d) of section 13 (8 USCA § 213 (d) gives a limited discretion to the Secretary, this does not extend to subdivision (b), as to which he must proceed according to the regulations made under section 24 (8 USCA § 222), by the Commissioner General with his approval. A strong argument might therefore be made that he has no more power to admit an alien in the face of the regulations than if the statute itself forbade. Regulations have the force of law; they require the assent of both officials; they are published; they are in general terms. The Secretary, it may be urged, no more than any one else, may lawfully dispense with them in the exercise of a personal discretion, such as in other cases the statute expressly allows him. If so, O'Reilly was not lawfully admitted, and the question would not arise as to what would be the result if he had been, as for example, under section 13 (d). Whatever the unfairness of enforcing the law against the carrier in spite of its violation in the alien's favor, we could not interfere.

■ But it is not necessary so to hold, for though he was lawfully admitted, nevertheless the fine was due. Subdivision (f) of section 13 (8 USCA § 213 (f) provides that nothing in the section at large shall effect a remission of any fine "accrued under section 16."

The only remission which the section could effect would be in case of the Secretary's discretionary interposition to admit. If it be supposed that under subdivision (b) the Secretary has discretionary power to admit an alien of O'Reilly's class, who does not comply with the regulations, at least the exercise of that discretion cannot go further than if the Secretary had admitted him under subdivision (d). The fine incurred by virtue of section 16 would still stand; subdivision (f) so provides. Thus our decisions are inapplicable, which have intimated, if they did not decide, that in other situations the admission of the alien tolls the fine. Norddeutscher Lloyd v. U. S., 213 F. 10 (C. C. A. 2); Compagnie Generale, etc., v. U. S., 51 F.(2d) 1053 (C. C. A. 2); Lloyd Sabaudo Societa v. Elting, 55 F.(2d) 1048 (C. C. A. 2). That may well be true when the statute does not say otherwise, but not here.

Furthermore, subdivision (f) answers the argument, sometimes put forward, that the fine, which is made up of the return passage money and a penal sum, is indivisible. Compagnie Générale, etc., v. U. S., supra; Lloyd Sabaudo Societa v. Elting, supra. Compare Norddeutscher Lloyd v. U. S., supra. Since the subdivision necessarily contemplates a case where the alien is admitted, and declares that the fine shall not then abate, we must choose whether to impose both items, or only the penal sum. As it is incredible that Congress should have intended to impose the return passage money when the alien stopped here, we choose the alternative. Thus, even though we are to assume that section 16 does not cover the importation of aliens who are admitted under a permit, the fine was proper. If the Secretary had no power to admit O'Reilly, his mistake could not relieve the plaintiff. If on the other hand he had a dispensatory power over the regulations, nevertheless it had no greater effect than his power to admit under section 13 (d): Section 13 (f) preserves the fine against any discretionary admission. That the Secretary properly used his discretion under section 16 (b) is apparent; it was easy for the plaintiff to learn whether O'Reilly had a permit. We cannot disguise our doubts as to the correctness of this path through the labyrinth which it has pleased Congress to set up. The maze of verbiage from which we are to extract a consistent intent, is beyond measure baffling; certainty must await an authoritative ruling, but, as best we can grope our way, we are content to follow the learned District Judge.

Judgment affirmed.